734 A.2d 199

**Delton Eugene HILL**

v.

**STATE of Maryland.**

**No. 130, Sept. Term, 1998.**

Court of Appeals of Maryland.

July 30, 1999.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

WILNER, Judge.

The question before us is whether, despite concluding that a prosecutor's closing argument was improper and subject to objection, the Court of Special Appeals erred in holding that the denial of petitioner's motion for mistrial based on that impropriety was not preserved for appellate review because the motion was not made until after the jury left the courtroom to deliberate. Our answer to that question, on the facts of this case, is "yes." In his brief, petitioner seeks to enlarge the issue and have us resolve the complaint that the Court of Special Appeals declined to address—that the trial court abused its discretion in denying the motion. As that issue was not raised in his petition for *certiorari,* however, it is not before us.

## BACKGROUND

While conducting surveillance of an area in Prince George's County known for frequent open-air drug sales, Corporal Alvin Sanders observed a station wagon parked on a restaurant parking lot. He saw at least two individuals approach the driver's side and exchange objects with the driver, whom he later identified as petitioner, Delton Hill, but could not see what was exchanged. When Hill drove away, Sanders fol-

lowed. After observing Hill proceed through a stop sign without stopping, Sanders executed a traffic stop which, because of concern over the conduct of one or more of the passengers in the rear seat of Hill's car, grew into a felony stop, involving backup units. A subsequent search of the car revealed a handgun protruding from under the driver's seat, a brown medicine bottle containing suspected crack cocaine in the front console, and two "rocks" of suspected cocaine on the floor beneath the back seat. According to Sanders, following his arrest, Hill admitted that the gun was his and that he kept it for protection. Hill was charged with transporting a firearm after having been convicted of a felony, in violation of Maryland Code, Article 27, § 291A(b)(1), possession of a firearm after having been so convicted, also in violation of that section, and possession of cocaine. A jury in the Circuit Court for Prince George's County convicted Hill of the first two counts, dealing with the firearm, but was unable to reach a verdict on the cocaine possession charge. The court merged the two convictions and sentenced Hill on the first count to four years imprisonment.

Only two witnesses testified, both called by the State. Corporal Sanders testified as noted above, but said that he made his observations from his cruiser parked some distance—he estimated about 2,000 feet—away, using binoculars. It was just before 9:00 on a February night, although the parking lot area was well-lit from outside lighting. Although defense counsel noted that Sanders had not mentioned Hill's admission regarding the gun in the officer's report, counsel did not otherwise impeach that admission. He did, however, cross-examine Sanders at some length regarding the officer's ability to see, from such a distance—more than the length of six football fields—the drug transactions he claimed to have seen. The State's second witness was Kevin Barnett, a friend of Hill. Barnett said that Hill picked him up, that they drove to the restaurant and went in for about five minutes to buy food, that when they returned to the car several people approached from both the driver's and passenger's side, that two people asked for a ride and got into the car, and that they

then left. He said that he never saw Hill in possession of either drugs or a gun and that he saw no drug transactions during the time he was with Hill. Barnett was not a helpful witness for the State.

The issue before us emanates, ultimately, from the insistence of the prosecutor, throughout the trial and over constant objection, on informing the jurors that they had a responsibility to keep their community safe from people like Hill. In a soup to nuts performance, the prosecutor, whether through inexperience or a more disturbing disdain for proper conduct, began his inappropriate remarks with the very first statement he made to the jury and did not end them until the very last statement he made, paying utterly no attention to the numerous objections that were sustained by the court. He commenced his opening statement by noting that his broken foot would mend but wondering if society would mend—"[s]ociety full of people like Mr. Hill who carry guns and drugs." An objection to that remark was sustained. In the next breath, however, he continued that "[o]ne only needs to read the paper to know what that does to our community." An objection to that also was sustained. After very briefly recounting the events leading to the officer's stop of the car, he told the jury, "what happens next is why you are here *and why you've been chosen to send a message to protect our community.*" (Emphasis added.) Objection sustained. Undeterred, he completed his opening statement by telling the jury that "[i]n the end, we're going to ask you to do the just thing, the right thing, the thing that protects all of us and keeps this community safe." Objection sustained. On that performance alone, Hill moved for a mistrial, which the court denied in favor of informing the jury that opening statements were not supposed to be argument and that the jury should not consider anything that the court declared objectionable.

The assault resumed when the prosecutor began his closing argument, the relevant portion of which was as follows:

"MR. JOHNSON: Thank you, Your Honor. Good morning, ladies and gentlemen. Defense counsel yesterday I suppose wanted to make the State feel guilty because we

mentioned the community of which you are a part. It is your community, and it is important. What you do here today sends a message, whatever you decide. And make no mistake about it; Delton Hill will go back and tell his cronies and buddies about what is going on here today.

MR. WOOD: Objection, Your Honor.

THE COURT: Overruled. This is argument.

MR. JOHNSON: So, what you do here today is extremely important. Perhaps defense counsel is lucky enough to go home to Potomac or River Road—

MR. WOOD: Objection.

THE COURT: Sustained.

MR. JOHNSON:—but people here in Prince George's County are in crisis. Whether you're in Greenbelt, Accokeek, Adelphi, Largo, it doesn't matter, because Prince George's County is in a crisis.

MR. WOOD: Objection, Your Honor.

THE COURT: Sustained.

MR. JOHNSON: People wonder why we can't get 4–star restaurants here.

MR. WOOD: Objection, Your Honor.

THE COURT: Sustained

MR. JOHNSON: People like Delton Hill. This case is about accountability. Will he be held accountable, or is it okay to say, do what you want? It's your community. No, it's not your community; it's our community. This is your turn to do something about it.

MR. WOOD: Objection, Your Honor.

THE COURT: Overruled."

Defense counsel retorted that he did not live in Potomac, an affluent Washington suburb, but in the District itself, and he suggested that the prosecutor's recurring references to "take back your community" were an indication that he did not want the jury to decide the case on the evidence, because he had no evidence. The prosecutor sent "these subliminal messages" because he did not want to talk about the facts. In rebuttal,

the prosecutor responded to counsel's attack on the State's evidence, interspersing his argument with such remarks, to which objections were sustained, as "[b]ut defense lawyer, in his attempt to get him off" and "his buddy, who is still here today cheering him on." Apparently unable to resist the urge, he ended his argument: "What message will you send Delton Hill? Is it, it's your community, do whatever you want ... Or is it your community?"

Hill objected to that last remark, but the objection was not ruled upon. Instead, the court immediately excused the alternate juror, swore the bailiff, and sent the jury to deliberate. The transcript shows that the bailiff was sworn at 11:23 a.m., and that the jury retired one minute later, at 11:24. Counsel promptly, to "complete the record," moved for a mistrial based on the closing argument of the State regarding "sending a message."[1] The court denied the motion, stating as its reason that it had sustained counsel's objections and told the jury that closing arguments were not evidence. That matter took three minutes. The transcript shows that, immediately upon denying the motion, the court went into recess, at 11:27 a.m. The jury sent out a note at 12:02, and the parties and the court gathered briefly to deal with it. After being excused for lunch, at about 12:30, the jury resumed its deliberations and, at some point just before 4:51 p.m., it informed the court that it had reached a verdict on the first two counts, but not on the third.

Hill complained again of the prosecutor's conduct in a motion for new trial, arguing that, unlike the situation regard-

---

1. In its brief, the State notes that the transcript does not reveal how much time elapsed between the close of argument and the swearing of the bailiff and suggests the possibility that there was a break in the proceeding—that some significant amount of time may have elapsed between the end of the argument and the making of the motion for mistrial. Although the transcript does not specify that time interval, it gives no indication whatever that there was any break in the proceeding, as it does on other occasions when there *was* a break. *See* Transcript of January 6, 1997, Vol. I at 1–15 and 1–38. The only reasonable inference from the transcript is that there was no break and that less than a minute elapsed between the end of the argument and the swearing of the bailiff.

ing the reception of evidence, when the sustaining of an objection precludes the jury from hearing and being tainted by the improper evidence, the damage from the prosecutor's improper remarks was done before an objection could be lodged. He urged that the case was a close one, evidenced in part by the fact that the jury could not agree on whether Hill was in possession of the cocaine found in the car, and he stressed the persistence of the prosecutor's prejudicial conduct and its effect on diverting the jury's attention from the evidence to the "gut level reaction" that "[y]ou let this man off, you are hurting your community." The court denied the motion, noting:

> "The majority of the objections raised by defense counsel in the State's closing argument were sustained by me. And in exercising my function as the trial Judge, and my review and recollection of what occurred during the course of this trial, I do not find that this Defendant did not receive a fair trial."

In his appeal to the Court of Special Appeals, Hill complained about the denial of his motions regarding both the State's opening statement and closing argument. With respect to the former, the intermediate appellate court, in its unreported opinion affirming the judgment, agreed that the prosecutor "should not have asserted that the jurors were chosen to send a message that would protect the community," but held that the trial judge "saved the situation for the [S]tate" by ruling promptly and decisively that the jury was not to consider that improper remark. With respect to the motion based on the State's closing argument, the court determined:

> "Whether appellant was entitled to a mistrial as a result of the prosecutor's final and/or rebuttal argument is an issue that has not been preserved for our review. Objections to improper argument must be 'interposed either (1) immediately after the allegedly improper comments are made, or (2) immediately after the argument is completed.' *Grier v. State,* 116 Md.App. 534, 545 [698 A.2d 1133] (1997). Appellant had a valid objection to the prosecutor's request that

jurors consider their own interests. Such a 'golden rule' argument is inappropriate. *Holmes v. State,* 119 Md.App. 518, 527 [705 A.2d 118] (1998). Had the motion for mistrial been made before the jurors were excused from the courtroom, Judge Spellbring would have been positioned to deliver another curative instruction and/or take other appropriate action (e.g. admonish the prosecutor) short of declaring a mistrial."

Having made that finding, the Court of Special Appeals went on to disapprove of the prosecutor's "intemperate appeals to class prejudice and passion," but returned, in the end, to its determination, which was dispositive, that "had he been requested to do so before deliberations began, Judge Spellbring would have yet again (1) evaluated the harm caused by the prosecutor's unfair arguments, and (2) taken the curative steps necessary to prevent injustice." That, the court held, "is why we shall not order a new trial in this case."

In his petition for *certiorari,* petitioner raised the single question, "[w]hether the Court of Special Appeals erred in ruling that a motion for mistrial, made after the jury retired to deliberate, on the basis of prosecutorial misconduct during closing argument, was properly denied because untimely."

## DISCUSSION

The first thing we need to do is to restate the question raised by petitioner in order for it to conform to the facts. The Court of Special Appeals did *not* rule that the motion was properly denied because it was untimely. The trial judge did not deny the motion because it was untimely, but because he believed that it had no merit—that, in light of his advice to the jury to disregard statements to which objections had been sustained, petitioner was not entitled to a mistrial. The issue of timeliness arose only in connection with whether petitioner's complaint about the trial judge's ruling was preserved for appellate review. Though affirming the ultimate judgment, as the issue of the prosecutor's opening statement *was* addressed on its merits, the appellate court did not affirm the trial

judge's ruling relating to the improper closing argument, but rather declined to address it on the ground that the complaint over that argument was not preserved.

Our recasting of the issue in this manner, given the facts of the case, does not amount to a material change in the issue. It does, however, point up a fallacy in the assumption made by the Court of Special Appeals—that, had the motion been made before the jury retired, the trial court would have "taken the curative steps necessary to prevent injustice." The record shows, quite clearly, that no different action would have been taken than was, in fact, taken. The impropriety of the prosecutor's remarks was raised not only in the motion for mistrial but later in the motion for new trial. On neither occasion did the State argue, nor did the trial judge mention, the question of timeliness. On both occasions, the judge denied the motion solely because of his conclusion that petitioner was not entitled, on the merits, to the relief he requested. The judge never suggested that, had the motion been made a minute or two earlier, he would have been inclined to give some further instruction or taken some other intermediate action. He was convinced that he had already done all that needed to be done to counteract the prosecutor's remarks.

The question, then, is more appropriately put: did the Court of Special Appeals err in holding, as a matter of law or inflexible appellate policy, that a defendant fails to preserve for appellate review a complaint over the denial of a motion for mistrial based on improper closing argument by a prosecutor if the motion is made after the jury has retired to consider its verdict but before the jury has announced the reaching of a verdict? In this case, that question is laden with the intermediate appellate court's further conclusion, with which we heartily agree, that the prosecutor's argument was, indeed, wholly improper and presumptively prejudicial—that petitioner "had a valid objection to the prosecutor's request that the jurors consider their own interest."

As noted, in reaching its conclusion that objections to improper argument are unpreserved for appellate review unless

made immediately after the improper comment is made or immediately after the argument is completed, the Court of Special Appeals relied on its earlier holding in *Grier v. State*, 116 Md.App. 534, 545, 698 A.2d 1133, 1138 (1997). Some comment about that case is in order. It involved three issues: whether a general objection sufficed to preserve a complaint about the admission of the defendant's post-arrest silence; whether the admission of that evidence was, in any event, harmless; and whether the defendant's complaint about the prosecutor's comment on the post-arrest silence in closing argument was preserved for appellate review. The court found against Grier on all three issues, concluding that the general objection did not preserve the objection, that the evidence was harmless, and that the objection to closing argument was also not preserved.

The first thing to note is that, on further review in that case, we concluded that the general objection *was* sufficient to preserve Grier's objection to the evidence and that the admission of that evidence was both erroneous and prejudicial. We reversed the judgment of the Court of Special Appeals on those grounds. *Grier v. State*, 351 Md. 241, 718 A.2d 211 (1998).[2] We did not address, in our *Grier*, the third issue of whether the defendant's objection to the State's closing argument was preserved. That issue was not raised in the petition for *certiorari* and, in light of our holding on the other issues, it would have been moot in any event. Had the Court of Special Appeals reached the correct conclusion in *Grier* on the first two issues, we presume that it too would have found the third issue moot and, for that reason, declined to address it.

Apart from that, the facts in *Grier* were different from those here. The prosecutor commented on Grier's post-arrest silence in the opening of his closing argument, without objection. He commented on it again in his rebuttal argument, also without objection. The jury was excused for lunch and told to

---

2. Our decision in *Grier* was not filed until a month after the Court of Special Appeals decided this case. That court's reliance on its earlier reported opinion was, therefore, entirely appropriate.

report back at 2:00 to begin deliberations. During the luncheon recess, defense counsel called the judge's chambers and left a message on the judge's voice mail complaining about the comment made during the rebuttal argument. It was not until after the jury had been deliberating for over an hour, however, that counsel lodged a proper motion for a mistrial. Analogizing the situation to a complaint over jury instructions, which Maryland Rule 4–325(e) requires be made "promptly after the court instructs the jury," the Court of Special Appeals determined:

> "This case is a classic example of the logistical problems involved in (1) reassembling everyone whose presence is required before the problem can be addressed, (2) hearing from counsel at a point in time when the comments at issue, and tone of voice with which they were delivered, are fresh in everyone's mind, (3) resolving the issue of what—if anything—should be done under the circumstances, and (4) returning the jurors to the jury box soon enough for the trial court to 'strike while the iron is hot.' "

*Grier v. State,* 116 Md.App. at 545, 698 A.2d at 1138.

On that basis, the court stated that it would continue to hold that objections to improper argument are timely if interposed either immediately after the allegedly improper comment is made or immediately after the argument is completed, but would decline requests to review improper argument objections "that were not presented to the trial judge until after the jurors have been excused from the courtroom." *Id.*

■ We share the concerns alluded to by the Court of Special Appeals, although they do not necessarily lead to the conclusion reached by that court. Maryland Rule 4–323(a) requires that objections to *evidence* be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent, and specifies that, if not so made, are waived. Rule 4–323(c) provides, in relevant part, that, for the purpose of review of any other ruling or order, it is sufficient that the party, at the time the ruling or order is made or sought, makes known to the court the action desired.

If a party has no opportunity to object to a ruling or order when it is made, the absence of an objection at that time does not constitute a waiver. Although not stated as directly as in § (a) of the Rule, the clear inference in § (c) is that, if there *is* an opportunity to object to an order or ruling when made, the failure to do so (and to inform the court of the relief requested) *may* constitute a waiver.

█ There are three problems with the intermediate appellate court's approach in this case. First, counsel *did* object to the prosecutor's closing remarks when they were made. Most of the objections were promptly ruled upon, but the last one was not; it was apparently overlooked by the court, which turned instead to dismissing the alternate juror, swearing the bailiff, and sending the jury to deliberate. Although counsel could have interrupted the court and, prior to the retirement of the jury, expanded his objection to include a request for mistrial and insisted on a ruling, he did not, as in *Grier*, wait an inordinate amount of time, but presented his request as soon as the court concluded its various remarks. Second, without commenting on whether the trial judge *could* have denied the motion for mistrial on the ground of untimeliness under the facts of this case, he did not do so. As indicated, he denied the motion solely because he found, on the merits, that petitioner was not entitled to that relief, and not because he believed that the motion was untimely. The appellate court interposed a defense to the motion, on its own initiative, that was never considered by the trial court.

Finally, and most significant, entertainment of the motion when it *was* made did not present the problems noted by the Court of Special Appeals in *Grier*. The motion was not based on an isolated remark, and it is clear that what was sought was more than just another curative instruction or the sustaining of the last objection. The point made was that the jury had been contaminated both by the prosecutor's improper (and, it appears, factually erroneous) reference to where defense counsel lived and by his persistent references to the need for the jurors to convict petitioner in order to preserve

the quality of their own communities. The granting of a mistrial on that ground would not have required the inconvenient reassembling of anyone—everyone but the jury was still in the courtroom and the jury's presence was not required— and the motion and argument on it were presented just moments after the comments complained of were made, when they were still fresh. Obviously, the trial judge, in entertaining and ruling upon the motion, did not find its timing inconvenient.

 For the reasons noted by the Court of Special Appeals in *Grier*, motions for mistrial should be made before the jury retires, and a defendant who fails to make such a motion in a timely manner risks its proper denial on that ground alone. Especially when the court might find that alternative relief, such as a curative instruction, would have sufficed to cure any error or prejudice, it may deny the motion if made too late for the court conveniently to give such an instruction. Retirement of the jury does not, however, act as a complete and inflexible termination of the right to make such a motion. For one thing, if the court were inclined to grant a mistrial, thereby ending the authority of the jury to decide the case, no substantial prejudice to the parties arises from the fact that the jury has already begun deliberations. Indeed, the same grounds may be raised in a motion for new trial made after a verdict is rendered. Moreover, although often inconvenient, it *is* possible to give supplemental instructions to a jury after it has retired. *See* Maryland Rule 4–325(a) (court may supplement instructions after closing arguments "when appropriate"). The giving of such supplemental instructions is generally within the discretion of the trial court. *Lovell v. State,* 347 Md. 623, 657, 702 A.2d 261, 278 (1997).

 We do not suggest that it is never appropriate for an appellate court to apply Rule 4–323(c) and decline to address a complaint over the denial of a mistrial that is not timely made. The Rule authorizes that approach. When, as here, however, (1) the motion is not unduly delayed and timeliness is not raised as a defense in the trial court, (2) the trial court does

not consider timeliness, even as an alternative ground, but denies the motion on the ground that *no* further relief is called for, (3) no prejudice to the court or either party is indicated, and (4) the appellate court determines that the complaint underlying the motion is valid, a complaint that the motion was improperly denied should be addressed on appeal and not found unpreserved.

■■■ For the reasons noted, we shall vacate the judgment of the Court of Special Appeals and remand the case for consideration of petitioner's complaint about the denial of his last motion for mistrial. In that consideration, the court must be guided by two equally important principles. There is, first, the general rule that "[o]rdinarily, the decision whether to grant a motion for a mistrial rests in the discretion of the trial judge" and that appellate review "is limited to whether there has been an abuse of discretion in denying the motion." *State v. Hawkins*, 326 Md. 270, 277, 604 A.2d 489, 493 (1992), quoting, in part, from *Kosmas v. State*, 316 Md. 587, 594, 560 A.2d 1137, 1141 (1989) and *White v. State*, 300 Md. 719, 737, 481 A.2d 201, 210 (1984), *vacated and remanded on other grounds*, 322 Md. 738, 589 A.2d 969 (1991). As the *Hawkins* court pointed out:

> "The fundamental rationale in leaving the matter of prejudice *vel non* to the sound discretion of the trial court is that the judge is in the best position to evaluate it. The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able to ascertain the demeanor of the witnesses and to note the reaction of the jurors and counsel to inadmissible matters. That is to say, the judge has his [or her] finger on the pulse of the trial."

*State v. Hawkins, supra,* 326 Md. at 278, 604 A.2d at 493.

■■■ That principle remains firm, and it obviously limits the scope of appellate review of the trial court's decision. That limited review, however, does not authorize a "rubber stamping" of the ruling or an abdication of the appellate court's ultimate responsibility to determine whether (1) there was an

adequate basis for the motion, and (2) if so, the denial of the motion was sufficiently prejudicial to constitute an abuse of discretion.

The case most often cited in dealing with complaints over remarks made by a prosecutor in opening statement or closing argument is *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974), which actually was a consolidation of two cases— *Wilhelm v. State* and *Cook v. State*. In *Wilhelm*, where the defendant was charged with assault to murder a police officer, the complaint was over the prosecutor's informing the jury, in opening statement, that "this is your occasion to do something about" the "hue and cry of police protection." Wilhelm moved for mistrial based on that one remark. The complaint in *Cook*, a murder case, was the prosecutor's informing the jury, in closing argument, that over 300 people had been murdered in Baltimore City in the last year, that an unknown number of persons had been robbed with weapons, and that the victims were most often people unable to fight back. Cook's motion for mistrial also was denied.

After an exhaustive review of the case law to that point and a close look at the record, we affirmed the convictions of the two defendants. As to closing argument, we noted that counsel has the right "to make any comment or argument that is warranted by the evidence proved or inferences therefrom" and that the prosecutor is free "to comment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his comments...." *Id.* at 412, 326 A.2d at 714. The prosecutor, we continued, "may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses," and, *in that regard*, "may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions." *Id.* at 413, 326 A.2d at 714. Citing *Esterline v. State*, 105 Md. 629, 66 A. 269 (1907), however, we cautioned that counsel is not permitted to comment on facts not in evidence or state what *could* have been proven, and that "[p]ersistence in such course of conduct may furnish good grounds for a new trial."

*Id.* at 413, 326 A.2d at 714. We cited *Wood v. State,* 192 Md. 643, 652, 65 A.2d 316, 320 (1949) and *Contee v. State,* 223 Md. 575, 584, 165 A.2d 889, 894–95 (1960) for the further propositions that "appeals to class prejudice or to passion are improper and may so poison the minds of the jurors that an accused may be deprived of a fair trial" and that "the State's Attorney has an obligation to refrain from making any remark—within the hearing of the jury—which is likely or apt to instigate prejudice against the accused." *Wilhelm, supra,* 272 Md. at 414–15, 326 A.2d at 715.

 *Wilhelm* also confirmed that "not every ill-considered remark made by counsel, even during the progress of the trial, is cause for challenge or mistrial" and that "[w]hat exceeds the limits of permissible comment depends on the facts in each case." *Id.* at 415, 326 A.2d at 715. Even when a clearly improper remark is made, a mistrial is not necessarily required. As we indicated at 423–24, 326 A.2d at 720:

"When in the first instance the remarks of the State's Attorney do appear to have been prejudicial, a significant factor in determining whether the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action, as the exigencies of the situation may have appeared to require, to overcome the likelihood of prejudice, such as informing the jury that the remark was improper, striking the remark and admonishing the jury to disregard it."

We pointed out that when such action has been taken by the trial court and found to be sufficient on appellate review, the judgment has not been reversed, but, "[c]ontrariwise, where no such action was taken by the trial court the prejudice found to have existed were grounds for reversal." *Id.* at 424, 326 A.2d at 720–21 (citing *Shoemaker v. State,* 228 Md. 462, 180 A.2d 682 (1962) and *Meno v. State,* 117 Md. 435, 83 A. 759 (1912)).

We affirmed the judgment in *Wilhelm,* noting that there was just the one improper remark that was not repeated, that

it was not the kind of remark "screaming out for the forceful interdiction of the trial judge," and that the evidence of Wilhelm's guilt was overwhelming. We thus concluded that the single remark did not infect his trial with unfairness and was not likely to have prejudiced him. We affirmed in *Cook* because the prosecutor's remark about the numbers of murders and armed robberies in Baltimore City was, more or less, a matter of common knowledge or general notoriety.

These principles have been repeated and applied many times since *Wilhelm,* most recently in *Degren v. State,* 352 Md. 400, 722 A.2d 887 (1999). There, we confirmed that, although attorneys "are afforded great leeway in presenting closing arguments to the jury," there "are limits in place to protect a defendant's right to a fair trial." *Id.* at 429–30, 722 A.2d at 901–02. We restated, as well, that not every improper remark necessarily mandates reversal, that reversal is required only when it appears that the prosecutor's remarks actually misled the jury or were likely to have misled or influenced the jury to the defendant's prejudice, and that that determination lies within the discretion of the trial court. *See* also *Henry v. State,* 324 Md. 204, 596 A.2d 1024 (1991), *cert. denied,* 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992); *Johnson v. State,* 325 Md. 511, 601 A.2d 1093 (1992); *Evans v. State,* 333 Md. 660, 637 A.2d 117, *cert. denied,* 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994).

In judging the conduct of the prosecutor, and the court's response to that conduct, in the light of these standards, the Court of Special Appeals should take note, both as a general introduction and as a fundamental governing precept, of the principle enunciated more than 60 years ago by the United States Supreme Court in *Berger v. United States,* 295 U.S. 78, 88–89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), that a prosecutor is not the representative of an ordinary party to a controversy "but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all" and whose interest in a criminal prosecution "is not that it shall

win a case, but that justice shall be done." The Court continued:

> "He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

In *State v. Torres,* 16 Wash.App. 254, 554 P.2d 1069, 1075 (1976), the Washington court made the telling point that "[a] prosecutor must always remember that he or she does not conduct a vendetta when trying any case, but serves as an officer of the court and of the state with the object in mind that all admissible evidence and all proper argument be made, but that inadmissible evidence and improper argument be avoided."

The Court of Special Appeals will undoubtedly also remain cognizant of its own conclusion that appeals to jurors to convict a defendant in order to preserve the safety or quality of their communities are improper and prejudicial. As it noted in its opinion in this case, in *Couser v. State,* 36 Md.App. 485, 374 A.2d 399 (1977), *aff'd on other grounds,* 282 Md. 125, 383 A.2d 389, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978), it had declared improper a prosecutor's statement to the jury that "by your vote you can say no to drug dealers, to people who rain destruction." *See also Holmes v. State,* 119 Md.App. 518, 705 A.2d 118, *cert. denied,* 350 Md. 278, 711 A.2d 870 (1998). Courts throughout the country have condemned arguments of that kind, which are unfairly prejudicial and risk diverting the focus of the jury away from its sole proper function of judging the defendant on the evidence presented. *See Arrieta–Agressot v. United States,* 3 F.3d 525, 527 (1st Cir.1993) (criminal trial is "not the occasion for superheated rhetoric from the government urging jurors to enlist in the war on drugs"); *United States v. Solivan,* 937 F.2d 1146 (6th Cir.1991) (government prosecutors are not at liberty to urge jurors to convict defendants as blows to the drug problem faced by society or specifically within

their communities, or to send messages to all drug dealers; such appeals are extremely prejudicial and harmful to the constitutional right of fair trial); *United States v. Monaghan,* 741 F.2d 1434 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985) (the evil lurking in such appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence); *United States v. Barlin,* 686 F.2d 81 (2d Cir.1982); *Powell v. United States,* 455 A.2d 405 (D.C.App.1982); *Jenkins v. State,* 563 So.2d 791 (Fla.App.1990); *State v. Apilando,* 79 Hawai'i 128, 900 P.2d 135 (1995); *State v. Draughn,* 76 Ohio App.3d 664, 602 N.E.2d 790 (1992); *State v. Goode,* 278 N.J.Super. 85, 650 A.2d 393 (A.D.1994).

The Court of Special Appeals will also need to take account of the persistency of the prosecutor's conduct—continuing to make these remarks time and again despite the court's rulings that the remarks were improper. A court obviously commits no error when it sustains objections to impermissible comments or gives a proper curative instruction, if that is all that is requested. There is a risk, however, when the prosecutor persistently ignores those rulings and continues in an improper course of conduct, that the jury may come to regard the court's rulings as rote window dressing and thus pay less attention to them. The number of such rulings may actually assume an inverse significance—the more of them, the less weight each or all of them will have—in which event only a mistrial may serve to remedy the error.

JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS IN THIS COURT TO BE PAID BY PRINCE GEORGE'S COUNTY.