28 A.3d 1217

**Cyrus Lee BEADS and Joseph Omar Smith**

v.

**STATE of Maryland.**

**No. 83, Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 21, 2011.

2

Allison Pierce Brasseaux, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner/Cross–Respondent.

Michelle W. Cole, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent/Cross–Petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

MURPHY, J.

In the Circuit Court for Baltimore City, a jury convicted Cyrus Lee Beads and Joseph Omar Smith, Petitioners, of several crimes against the person of three victims, as well as several related offenses, including use of a handgun in the commission of a crime of violence. The State's evidence was sufficient to establish that Petitioners committed those offenses on June 7, 2005. Both Petitioners noted an appeal to the Court of Special Appeals. That Court consolidated the appeals, and affirmed the judgments of conviction in an unreported opinion. Petitioners then filed a petition for writ of certiorari in which they requested that this Court address four questions:

1. Where two defendants with identical interests are jointly tried and where one defendant objects to remarks in closing argument that are equally damaging to both, should the objection of one defendant be deemed to preserve the issue as to both defendants, and, if it does not, should this Court recognize plain error?

2. Should the petitioners' convictions be reversed in light of the prosecutor's prejudicial remarks during closing argument when she (1) denigrated the role of defense counsel by, among other things, "caution[ing]" the jury "that unlike the State, the Defense's specific role in this case is to get their Defendants off"; (2) improperly appealed to the jury to protect the community by saying "enough"; and (3) introduced the specter of witness intimidation into the case by suggesting to the jury that a key witness had moved because she and her family had been threatened by one of the defendants despite the fact that there was no evidence to that effect in the record?

3. Where the jury sent a note during deliberations which asked if it could have a tape of the testimony of a key witness and which asked if the same witness had given a recorded pre-trial statement, did the Court of Special Appeals err when it held that the trial court's failure to advise the petitioners and their counsel about the note and to provide the jury with a response to the note was harmless error in light of the fact that the trial court told the jury, in response to a different note, that the jury had all of the evidence in the case?

4. Where a witness testified three times that Mr. Smith had been incarcerated, did the Court of Special Appeals err when it held that a mistrial was not warranted because defense counsel had invited the error by asking the witness whether she knew Mr. Smith's mother and when it held that any prejudice Mr. Smith suffered was minimal given the context of her testimony and the "strong evidence" against him?

We granted that petition. 415 Md. 607, 4 A.3d 512 (2010). For the reasons that follow, we answer "yes" to question 2 and question 4. In light of these answers, the issues presented in question 1 and question 3 are moot.

We hold that (1) the trial court erroneously overruled Petitioner Beads' objections to improper prosecutorial argument, (2) the trial court erroneously concluded that the cross-examination of Petitioner Smith's trial counsel "opened" the door to testimony that Smith had been incarcerated, and (3) because the trial court failed to take any corrective action in response to the improper arguments and inadmissible evidence, we are not persuaded beyond a reasonable doubt that these erroneous rulings were harmless. We shall therefore direct that these cases be remanded for a new trial.

## Background

On June 7, 2005, an utterly senseless episode of violence occurred in front of 3832 Roland View Avenue in Baltimore City. During a gun battle, one or more persons fired shots into a crowd, killing Mr. Lawrence Johnson, and wounding two

other victims, Jeremy Drake and Ronald McCutcheon. Although no one present at the scene of the shooting identified either Petitioner as the shooter, each Petitioner's criminal agency was established by the testimony of two witnesses—Kelly Rae Miller, and Darren Buie—who observed and spoke with Petitioners when they entered Mr. Buie's residence shortly after the shooting, as well as by ballistics evidence presented by a firearms examiner who testified that bullets recovered from the crime scene were fired by someone (1) using the very handgun, a 9 mm Glock, seized from a taxicab in which Petitioner Beads was riding, and (2) using a .38 caliber Smith and Wesson found to be "consistent with" the one seized from under a bed in which Petitioner Smith had been sleeping.

The following transpired during the prosecutor's opening statement:

> [Prosecutor]: Cyrus Beads and Joseph Omar Smith went to the 3800 block of Roland View Avenue and they went there hunting. They went there armed at night and they hid, and they ambushed these people who were standing around drinking and singing old Temptations songs, and as a result, Mr. Johnson, 44 years old, a father, a grandfather, a working man, a husband, someone who had nothing to do with the business that these men set out to take care of, is dead and today, ladies and gentlemen, it's time for someone to say, "Enough. Enough."
>
> [Counsel for Smith]: Objection.
>
> THE COURT: Overruled.

Petitioner Smith's trial counsel moved for a mistrial after the Circuit Court overruled his objection to evidence that Petitioner Smith had been "incarcerated." The opinion of the Court of Special Appeals includes the following discussion of this issue:

> At trial, Roslyn Peterson [the deceased victim's wife] testified that on June 6th, the day before the shooting, she saw a blue station wagon at the bottom of her block. There were two men in the car, and one of them had a gun. Peterson

did not identify the men and could only testify that one of them had long plaits. In an effort to demonstrate that Smith was not one of the two men Peterson saw in the car, defense counsel inquired as to whether she knew Smith and his mother. The following colloquy occurred:

[Smith's Counsel]: Do you know a woman by the name of Porscha Smith?

\* \* \*

[Smith's Counsel]: Okay. I assume when you're saying "he," you're referring to the gentleman, Joseph Omar Smith—

[Peterson]: Exactly.

[Smith's Counsel]:—sitting next to me?

[Peterson]: Yes.

[Smith's Counsel]: This is Porscha Smith's son; is that correct?

[Peterson]: Yes.

[Smith's Counsel]: You know him?

[Peterson]: I didn't know it was his (sic) son during the time. I guess, yes. After I found out that that was his (sic) son—I haven't seen him since he was a little boy. He was incarcerated. I hadn't seen him since he came home. So I don't know how he looked—

[Smith's Counsel]: Objection, Your Honor.

[Peterson]:—after he came from incarcerated (sic).

THE COURT: Overruled. You opened it. You opened it. Overruled.

[Peterson]: He was incarcerated. I hadn't seen him.

THE COURT: Excuse me, ma'am.

[Smith's Counsel]: Objection. May we approach the bench?

THE COURT: No. No. You opened it. She gave you an answer. Now, ma'am, please only respond to the questions. No outbursts. I know how upset you are, but no outbursts.

Next question. [Smith's Counsel]: Your Honor, may we approach? I would like to make a motion.

At that point, the parties approached the bench, and Smith moved for a mistrial. The court denied the motion, stating:

I think that you opened up unwittingly, I think, a line of questioning with respect to how long has it been since she saw him. She said she knew him when he was a little boy—I don't know how little—and hasn't seen him since and she mentioned he was away, that he was incarcerated. Now, I know that's a little tenuous, but I don't think it warrants a mistrial motion being granted. I'll deny the motion.

Immediately thereafter, counsel for Smith asked the court to strike Peterson's testimony and instruct the jury to disregard it, but the court denied that request.

The following transpired at the end of the prosecutor's closing argument:

[Prosecutor]: You're now going to hear from the Defense attorneys, both of whom are fine attorneys. I caution you, that unlike the State, the Defense's specific role in this case is to get their Defendants off.

[Counsel for Smith]: Objection.

THE COURT: Overruled.

[Prosecutor]: It is their job, and they do it well, to throw up some smoke, to lob a grenade, to confuse. That doesn't mean that they aren't important and that you shouldn't listen carefully. But even when all that is said and done, I believe that you will conclude, as you must conclude in this case, that Cyrus Beads and Joseph Omar Smith conspired to murder, and did in fact murder, Lawrence Johnson, conspired to murder and did in fact attempt to murder, Jeremy Drake. Did conspire to murder and did in fact attempt to murder Pascal Ryan [McCutcheon]. And I thank you sincerely for your attention.

The following transpired during the prosecutor's rebuttal argument:

[Prosecutor]: I don't think it[ ]s right to call witnesses who come forward in a murder trial in Baltimore City names, like liar, or junkie, or militant. There are many, many reasons why witnesses do not come forward—

Objection Your Honor.

THE COURT: Overruled.

[Prosecutor]:—in murder trials immediately. One of them is concern for safety.

[Counsel for Beads]: Objection Your Honor.

THE COURT: Overruled.

[Prosecutor]: In this case, concern for family as well. My son, I know his entire family. We have moved, we live in Allegheny County now. I don't think it's fair to call them names; convicted felon, liar, junkie, meal ticket. Why don't we go a little further and say what we're really thinking.

[Prosecutor]: Another reason why witnesses do not come forward is because they don't want to be subjected to the public humiliation of cross examination. They don't want to be—

[Counsel for Beads]: Objection Your Honor.

THE COURT: Overruled.

[Prosecutor]:—submitted to the public humiliation of sitting on the witness stand and speaking into this microphone about all of the mistakes and craziness of their lives.

* * *

[Prosecutor]: Mr. Buie wasn't put in this bad spot by Kelly Miller, or by Detective Juan Diaz. Joey Smith brought this to him, to his lady friend. And Joey Smith brought to him Cyrus Beads. That's why he's in this tough spot and for no other reason. And I would suggest that to this day he's trying to protect that boy who both Kelly and Darren say they had not done anything but try to help, to give him a place to live when he had nowhere to go. To give his girlfriend a place to live when she had nowhere to go. To help him get a job when he had no source of income, that they—no employment. They lent him money. They did nothing but help this boy. Their words, not mine. So I show you this to remind you what this is about and to say to you enough. Say enough. Like some of the courageous women in this case said.

10

[Counsel for Smith]: Objection Your Honor.

THE COURT: Overruled.

The jury convicted Petitioner Beads of the attempted second degree murders of Mr. McCutcheon and Mr. Drake, the first degree assaults of those two victims, conspiracy to murder those two victims, two counts of use of a handgun in the commission of a crime of violence, and three counts of carrying a handgun. The jury convicted Petitioner Smith of the second degree murder of Mr. Johnson, the attempted second degree murders of Mr. McCutcheon and Mrs. Drake, the first degree assault of Mr. Drake, conspiracy to murder Mr. McCutcheon and Mrs. Drake, three counts of use of handgun in the commission of a crime of violence, and three counts of carrying a handgun.

## Discussion

### I.

 Petitioners argue that the trial court erroneously overruled objections to the above quoted unfairly prejudicial comments made by the prosecutor during opening statement, closing argument, and rebuttal argument. We agree that the comments at issue were inappropriate. It is well settled, however, that

> [n]ot every improper remark [made by a prosecutor during closing argument], however, necessarily mandates reversal, and "what exceeds the limits of permissible comment depends on the facts in each case." We have said that "reversal is only required where it appears that the remarks of prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused." This determination of whether the prosecutor's comments were prejudicial or simply rhetorical flourish lies within the sound discretion of the trial court. On review, an appellate court should not reverse the trial court unless that court clearly abused the exercise of its discretion and prejudiced the accused.

*Degren v. State,* 352 Md. 400, 430–31, 722 A.2d 887, 902 (1999) (internal citations omitted). We must determine whether the erroneous overruling of the objections constituted reversible error.

■■■ The prosecutor's comments about the role of defense counsel, although inappropriate, are unlikely to have "misled or influenced the jury to the prejudice of the accused." On the other hand, "appeals to jurors to convict a defendant in order to preserve the safety or quality of their communities are improper and prejudicial." *Hill v. State,* 355 Md. 206, 225, 734 A.2d 199, 209 (1999). The "say Enough!" exhortation implored the jurors to consider their own personal safety and therefore violated the prohibition against the "golden rule" argument.

Although the Court of Special Appeals did not hold that the "say Enough!" exhortation was appropriate, either in opening statement or in closing argument, that Court provided the following explanation for its conclusion that this exhortation was not so outrageous as to require a new trial:

> In *Hill,* the Court of Appeals held that the prosecutor's arguments urging jurors to consider their own interests and send a message to protect their community were wholly improper and presumptively prejudicial. Unlike the remarks at issue in the case before us, the arguments in *Hill* were not isolated, but rather pervaded the trial.
>
> \* \* \*
>
> In *Holmes* [*v. State,* 119 Md.App. 518, 705 A.2d 118 (1998)] the prosecutor argued in summation that "This is not about jail time. It's about a day of reckoning, the day of accountability, the day we say no, Mr. Holmes, no longer will we allow you to spread that poison on the streets." *Holmes,* 119 Md.App. at 526–27[, 705 A.2d at 122–123]. We held that the "we say no" comments urged the jurors to consider their own interests and violated the prohibition against the "golden rule" argument and we trusted that those comments would not be repeated when the case was tried again, as a new trial was granted on another issue.

In the case before us, the prosecutor's statements that it was time for someone to say enough do not rise to the level of an improper appeal to protect the community, nor did they have the level of severity of the arguments made in either *Hill* or *Holmes*. Thus, reversal is not required.

We are persuaded that reversal would not be required if the danger of unfair prejudice resulting from this argument had been removed by the prompt and decisive action of the Circuit Court, but the record shows that the Circuit Court erroneously overruled the objections interposed by Petitioner Beads' trial counsel.

■ As to Petitioners' argument that they were unfairly prejudiced by the prosecutor's rebuttal argument, which (in the words of their brief) "introduced the specter of witness intimidation into the case," the Court of Special Appeals stated:

> We find no error in the prosecutor's arguments because they were made in response to defense counsel's argument that the case rested solely upon the testimony of two convicted felons, the implied argument that there were other, more credible witnesses that were not called, and references to Miller and Buie as felons, junkies, liars, on parole and "meal ticket." (Tr. 6/19/09 at 57–61) *See Mitchell*, 408 Md. at 388 and 392–93 [,969 A.2d at 1001 and 1003] (holding that a prosecutor may reasonably reply to arguments made by defense counsel that open the door to such a response). In addition, testimony was adduced at trial that Drake, McCutcheon, and [Robert] England were not cooperative with [the investigating officers]. In light of the testimony and argument presented, we hold that the prosecutor's comments were properly based upon facts in evidence.

■ We hold that, because neither of Petitioners' trial counsel made an improper closing argument, the "invited response" doctrine is not applicable to the unfairly prejudicial comments made during the State's rebuttal argument. "[I]t is evident that the 'invited response' doctrine applies only when

defense counsel first makes an improper argument." *Mitchell v. State*, 408 Md. 368, 382, 969 A.2d 989, 997 (2009). Petitioners' trial counsel were entitled to attack the credibility of Miller and Buie without "opening the door" to a rebuttal argument implying that the shootings were witnessed by persons of good character who were afraid to cooperate with the investigators. Moreover, the evidence indicated that fear of self incrimination—rather than fear of either Petitioner—was the reason why Drake, McCutcheon and England were not cooperative.[1] Under these circumstances, the Circuit Court should have sustained Petitioner Beads' objection to the improper rebuttal argument.

In *Spain v. State*, 386 Md. 145, 872 A.2d 25 (2005), this Court stated:

> When assessing whether reversible error occurs when improper statements are made during closing argument, a reviewing court may consider several factors, including the severity of the remarks, **the measures taken to cure any potential prejudice,** and the weight of the evidence against the accused. *U.S. v. Melendez*, 57 F.3d 238, 241 (2nd Cir.1995); *see also Henry v. State*, 324 Md. 204, 232, 596 A.2d 1024, 1038 (1991) (finding that "[i]n determining whether reversible error occurred, an appellate court must take into account '(1) the closeness of the case, 2) the centrality of the issue affected by the error, and 3) **the steps taken to mitigate the effects of the error**'" (citations omitted)).

*Id.* at 159, 872 A.2d at 33. (Emphasis added).

The record clearly shows that the case at bar is not one in which the danger of unfair prejudice resulting from an improper argument has been removed by a ruling that "sustained" a timely objection and/or by a "curative" instruction. Moreover, because the Circuit Court erroneously *overruled* objections to the improper arguments that created the danger of unfair prejudice, those erroneous rulings may well have

---

1. Subsequent to the shootings at issue, Mr. England was found in possession of a .40 caliber Smith and Wesson that had been fired by someone at the scene of the crime.

added greater impact to the improper arguments. As the Court of Special Appeals noted in *Curry v. State*, 54 Md.App. 250, 256, 458 A.2d 474, 478 (1983), while holding that an "improper argument" objection is timely if made promptly after the argument has concluded:

> If [appellants' trial counsel] had objected at the time the remark was made, they might have underscored the prosecutor's comments and perhaps added greater impact to those remarks. Additionally, they ran the risk of the court's overruling the objections, thus emphasizing to the jury the "correctness" of the comments.

In *Donaldson v. State*, 416 Md. 467, 7 A.3d 84 (2010), while holding that the petitioner was entitled to a new trial as a result of unfairly prejudicial prosecutorial argument, this Court stated:

> We must determine, upon our "own independent review of the record," whether we are "able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Lee v. State*, 405 Md. [148] at 164, 950 A.2d [125] at 134 [ (2008) ] *(quoting Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976)).

*Id.* at 496–97, 7 A.3d at 101. In our "harmless error" analysis, we must consider the "cumulative effect" of the improper comments. *Lawson v. State*, 389 Md. 570, 600, 886 A.2d 876, 893 (2005).

As to "the closeness of the case," the case at bar is not one in which the State's evidence was overwhelming. Petitioner Beads' fingerprints were not found on the Glock seized from the taxicab in which he was riding. The firearms expert was unable to conclude that the Smith and Wesson seized from under Petitioner Smith's bed was the Smith and Wesson that fired any bullet recovered at the crime scene. Ms. Miller and Mr. Buie were vulnerable to impeachment that attacked their character for veracity as well as their motivation to testify for the State. Under these circumstances, we are unable to declare that we are persuaded beyond a reasonable doubt that

the erroneous rulings preserved for appellate review by Petitioner Beads' trial counsel "in no way influenced the verdict."

## II.

The Circuit Court erred in concluding that cross-examination of Petitioner Smith's trial counsel "opened" the door to Ms. Peterson's testimony that Petitioner Smith had been "incarcerated." Although the Court of Special Appeals correctly noted "that the denial of the motion to strike Peterson's testimony was not appealed," the fact that this motion was denied is of significant consequence. While it is often stated that appellate courts apply the "abuse of discretion" standard of review to determine whether a motion for mistrial should have been granted, that standard is not applicable when the record shows that the trial court did not exercise discretion.

In the case at bar, the record shows that the trial court (1) erroneously concluded that the cross-examination of Ms. Peterson "opened" the door to her non-responsive answer, and (2) denied the mistrial motion based upon that erroneous conclusion. To the extent that the above quoted bench conference permits the inference that the trial court did exercise discretion, such an inference would be unreasonable in light of the fact that the trial court thereafter denied Petitioner Smith's "motion to strike."

The party who is questioning a witness is entitled to a ruling "striking" a non-responsive answer merely because the answer is non-responsive. *Gas Equip. Corp. v. Baldwin,* 152 Md. 321, 325, 136 A. 644, 646 (1927). It is clear from the above quoted portion of Ms. Peterson's cross-examination that her answer to the question "You know him?" was "non-responsive and could not have been anticipated from the form of the question." *Mitchell v. Slye,* 137 Md. 87, 99, 111 A. 814, 817 (1920). In that case, this Court stated:

The rule requiring objections to testimony to be made promptly is for the purpose of facilitating rather than retarding the administration of justice, and should receive a

reasonable interpretation, and even when the objection comes after a question has been answered, if it appears that the delay was inadvertent and unintentional, and what under all the circumstances reasonable diligence was exercised, or that no sufficient opportunity had been given to make it sooner, the objection will be considered to have been taken in time.

*Id.* at 99–100, 111 A. at 817.

In *Colter v. State*, 297 Md. 423, 466 A.2d 1286 (1983), and *Watson v. State*, 311 Md. 370, 535 A.2d 455 (1988), this Court ordered new trials on the ground that the trial court did not exercise discretion in resolving an issue that required the exercise of discretion. In *Colter*, the trial court erroneously "applied Rule 741 as a mandatory rule excluding the testimony of an undisclosed alibi witness upon the failure of the defendant to comply with the notice requirement." 297 Md. at 430, 466 A.2d at 1290. In *Watson*, the trial court erroneously concluded that, because attempted rape is an "infamous crime," he did not have discretion to prohibit the State from cross-examining the defendant—on trial for rape and related offenses—about the defendant's prior conviction for attempted rape. 311 Md. at 372, 535 A.2d at 456. Our holdings in *Colter* and *Watson* are fully applicable to the issue of whether Petitioner Smith is entitled to a new trial on the ground that the Circuit Court's denial of his motion for mistrial was based on its erroneous conclusion that the question asked by his trial counsel "opened the door" to Ms. Peterson's inadmissible testimony, rather than on the exercise of discretion. Because it is clear that the Circuit Court did not exercise the discretion it was required to exercise, Petitioner Smith is entitled to a new trial.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS REVERSED; CASES REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR NEW TRIALS; COSTS IN THIS COURT AND IN THE COURT OF**

## SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.