950 A.2d 125

Kevin Ricardo LEE

v.

STATE of Maryland.

No. 132, Sept. Term, 2007.

Court of Appeals of Maryland.

June 13, 2008.

David P. Kennedy, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, IRMA S. RAKER (Retired, specially assigned), and DALE R. CATHELL (Retired, specially assigned), JJ.

BATTAGLIA, J.

In this case we shall address whether the trial judge erred in permitting the State, over objection, to argue to the jury

during rebuttal argument that a victim's testimony was not credible because he was following "the law of the streets," that the jury should protect their community and clean up the streets, and that the jury should teach the defendant not to abide by the "laws of the streets" in settling disputes. We shall hold that the combination of all of these comments exceeded the permissible scope of closing argument and that the trial judge did err in permitting the prosecutor to make those comments.

## Background

Petitioner, the defendant below, Kevin Ricardo Lee, was indicted for various offenses that allegedly occurred on September 13th, 2003, arising from a shooting involving Richard Cotton in Baltimore City. The offenses included attempted first-degree murder in violation of Section 2–205 of the Criminal Law Article, Maryland Code (2002),[1] attempted second-degree murder in violation of Section 2–206, first-degree assault in violation of Section 3–202, second-degree assault in violation of Section 3–203, use of a handgun in the commission of a felony or crime of violence in violation of Section 4–204, wearing, carrying and transporting a handgun upon or about his person in violation of Section 4–203, reckless endangerment in violation of Section 3–204(a)(1), discharging a firearm within Baltimore City limits in violation of Article 19, Section 59–2 of the Baltimore City Code, and common law conspiracy to commit murder.

At trial, the State presented one eyewitness, who testified that on September 12th, 2003, Lee and Cotton were involved in a fight on her porch and that Lee had a gun at that time. The eyewitness further testified that the following day she heard gunshots and from an upstairs window in her home, she witnessed Lee running up the street after Cotton with an "object that looked like a gun" from which smoke appeared to be emanating. Subsequently, after being shown photographs

---

1. All statutory references are to the Criminal Law Article, Maryland Code (2002), unless otherwise noted.

by the police, she identified Lee as the individual involved in the altercation with Cotton on her porch, as well as the one chasing Cotton down the street on the day of the shooting. On cross-examination, she admitted that, about a year after the shooting, she told her brother that she had not seen anything, but stated on redirect that she did so because she "didn't want [her brother] in the middle of it." Two detectives and a police officer also testified regarding their investigation of the case, including the eyewitness's identification of Lee. Forensic evidence was not offered.

Lee called Cotton, the victim, to the stand; Cotton testified that Lee did not shoot him. Cotton also stated that he did not recall any altercation with Lee on the day before the shooting, as well as any guns or any discussion of guns. He also responded that although he was "pretty intoxicated" when he was shot, he was "sober enough" to know that Lee was not the culprit. Lee also presented the testimony of the brother of the eyewitness, who remarked that the view of the eyewitness from the upstairs window to the street would have been obstructed and that she had told him that she had not seen anything.

After the conclusion of evidence, the trial judge gave instructions to the jury,[2] iterating that they were the sole judges of the evidence, that they were the judges of whether or not a witness should be believed, that they should not be swayed by sympathy, prejudice or public opinion, and that both opening statements and closing arguments were not evidence, but "intended only to help you understand the evidence and apply the law to that evidence."[3]

---

2. During the jury instructions, the court ordered a recess and granted Lee's motion for judgment of acquittal on the conspiracy count.

3. The instructions, in relevant part, stated:
 You must consider this case fairly and impartially. You're to perform this duty without bias or prejudice as to any party. You should not be swayed by sympathy, prejudice, or public opinion.
 In making your decision, you must consider the evidence in this case; that is, the testimony from the witness stand—and that's really most

After the State presented closing argument, Lee's counsel, in his closing, posited that the State's evidence was based entirely on the testimony of the eyewitness, whose account of the events had changed over time. Lee's counsel suggested, therefore, that the jury should believe Cotton, the victim, who testified that Lee did not shoot him; he remarked that the reason that the State did not call Cotton to testify, requiring Lee to call him, was that, "He didn't prove their case. They don't like what he had to say. They made no effort to bring him in." He further suggested to the jury that it would "go[ ] against nature" for the victim to lie on the stand and not identify his assailant:

[COUNSEL FOR LEE]: Mr. Cotton is entitled to the presumption that he's telling the truth. He's the victim. There wasn't one iota of evidence presented by the State to suggest to you that he's lying or trying to deceive you other than that he's a friend. So I guess what that means is, if your friend is charged with a crime, the State doesn't want you to come in and say, no, he didn't do it. You're lying. You're just trying to protect him. You took three shots and you're just trying to protect him. That's what the State is asking you to assume. I suggest to you that it goes against nature. Maybe it's true. It is possible it is true. I can't tell you that it's impossible that Cotton got on that witness stand after having three gunshot wounds and lied to you just to protect his friend. That is not impossible. Is it

---

of it, obviously—any physical evidence or exhibits that were admitted into evidence and they will be sent up with you to the jury room.

\* \* \*

Opening statements, which you've already heard, and closing arguments, which you're about to hear, are not evidence in this case. They're intended only to help you understand the evidence and apply the law to that evidence. Therefore, if your memory of the evidence differs from anything the lawyers say or anything I say, you are to rely upon your understanding of the evidence and you're obviously allowed to look at your notes, but it's your understanding of the evidence that matters.

You are the sole judge of whether or not a witness should be believed or not believed.

*See* Maryland Criminal Pattern Jury Instructions, Sections 2:04 and 3:0 (1995).

likely? Is it likely? Do you disbelieve Cotton beyond a reasonable doubt? I suggest to you that you can't.

On rebuttal, the State argued that the jurors should not believe Cotton, because he was untruthful, because Cotton was following "the law of the streets"; Lee's counsel interposed several objections, which were overruled:

[STATE]: ... I'm talking about Baltimore, the city that reads. Let's establish that I'm talking about the city that bleeds. Now, Richard Cotton came to court and testified that this defendant did not shoot him, and this defense counsel doesn't know why, but in order to sit on this jury—

[COUNSEL FOR LEE]: Objection.

THE COURT: Overruled.

[STATE]:—you have to be residents of Baltimore City and I'm hoping you do.

Richard Cotton would have you believe first of all, that there was not a fight the day before on the 12th. He would have you believe that [the eyewitness] called the police for nothing at all and we know [the eyewitness] called the police because Officer Henry testified on the stand that he responded.

Now, if you believe Richard Cotton, then you would have to believe that when Officer Henry said that he saw the defendant and the defendant just broke out running, you would have to believe that he was running for the sport of it. When Officer Henry testified that he observed the defendant hiding in the bushes, you would have to believe that he was laying on the ground for convenience. Do not let your intelligence be insulted.

Richard Cotton came here to help his boy, his friend, his buddy because this Court read you the law of the State of Maryland, but that has nothing to do with the law of the streets of Baltimore. Let's make the distinction. Defense can't understand somebody taking three shots.

[COUNSEL FOR LEE]: Objection.

THE COURT: Overruled.

[STATE]: He can't understand somebody taking three shots, but perhaps you can understand somebody who doesn't even remember how many times he got shot. Defense would have you to believe that Richard Cotton came here to tell you the honest-to-God truth, but I beg to differ. I beg to differ. Under no circumstances, if you live by the law of the streets of Baltimore, do you help police—

[COUNSEL FOR LEE]: Objection.

THE COURT: It's argument. Overruled.

\* \* \*

[STATE]:—you need to be residents of Baltimore City to live on this jury. We're not in Missouri.

\* \* \*

Richard Cotton, from the beginning, was not interested in assisting the police in solving this crime. He knew who shot him then, he knows who shot him now, but this building we are in, this is not his law, not the law that he follows, not the justice that he seeks.

The prosecutor continued, asserting that she represented the citizens of Baltimore City, who had a right to be safe in their neighborhoods; she asked, "and those residents ask that you teach this defendant ... that disputes aren't settled by the blast of a gun." Lee's counsel objected, to no avail. When the judge overruled his objections, he also requested a curative instruction, after which the judge informed the jury that the prosecution was making "an argument," and, repeating the instructions given earlier, that appeals to passion and prejudice were not evidence:

[STATE]: Now, after firing a gun in a residential neighborhood where [the eyewitness] told you herself that at the time this incident happened she had a nephew outside playing, that is a reckless act. I represent the State of Maryland, the city residents. All of the residents of the 4700 block of Belvedere who has homes close to where this happened, who may have been on the street going from the

car to the house, on the way home, whatever, all of the residents want justice, even if Richard Cotton doesn't.

Now, the defendant has a lot of rights, as well he should, as well he should, and pay attention to them all, but who else has rights? Do the residents in that area have a right to be able—

[COUNSEL FOR LEE]: Objection, Your Honor.

THE COURT: Overruled. It's argument.

[COUNSEL FOR LEE]: It's improper argument.

THE COURT: No, it isn't. Overruled.

[STATE]: Do the residents of that area have the right to be able to be safe in their environment? I ask and those residents ask that you teach this defendant—

[COUNSEL FOR LEE]: Objection, Your Honor.

THE COURT: Overruled.

[COUNSEL FOR LEE]: It is improper for the State's Attorney to suggest to the jury that they're here to clean up the streets, or they're here to protect the residents of any neighborhood. That is improper, Your Honor, and I would ask for a curing instruction and admonishing of the State's Attorney. The jury is here to decide under the facts of this case whether this defendant is guilty of crimes.

THE COURT: Appeals to passion, prejudice, so forth and so on, are not proper appeals. It's an argument, but your duty in this case is to decide the case based on the evidence, not on passion or prejudice. Is that clear? Continue.

Immediately thereafter, the State's Attorney completed her closing argument by repeating the "laws of the streets" and asking the jury to teach the defendant a lesson not to settle disputes with violence. Lee's counsel objected and was overruled:

[STATE]:—teach the defendant that disputes aren't settled by the blast of a gun, teach the defendant that pulling a trigger doesn't make you a man, it makes you a criminal—

[COUNSEL FOR LEE]: Objection.

THE COURT: Overruled.

[STATE]:—teach the defendant not to follow the laws of the streets of Baltimore, but to follow the laws of the State of Maryland.

The jury deliberated and found Lee guilty of first-degree assault, use of a handgun in the commission of a felony or crime of violence, wearing, carrying and transporting a handgun upon and about his person, reckless endangerment and discharging a firearm within Baltimore City limits, but acquitted him of attempted first and second degree murder. Lee filed a motion for a new trial, which was denied. The judge sentenced Lee to twenty years imprisonment, the first five without parole, for using a handgun in the commission of a felony or crime of violence, and ten years for first-degree assault to run consecutively to the use of a handgun sentence; the sentences for the other convictions were merged.[4]

Lee noted an appeal to the Court of Special Appeals, which, in an unreported opinion, affirmed the judgment of the Circuit Court. Addressing the question of whether the trial court erred in permitting the "law(s) of the streets" and "clean up the streets" comments by the prosecutor during its rebuttal argument,[5] the intermediate appellate court opined that the State's "comments came close to overstepping the bounds of legitimate argument," but that the jury was not mislead by the comments so as to render Lee's trial unfair because the judge "took prompt curative action." Moreover, the panel explicated that the State was entitled to respond, in rebuttal, to arguments raised in the defense's closing argument.

Lee filed a Petition for Writ of Certiorari, which we granted, *Lee v. State*, 403 Md. 304, 941 A.2d 1104 (2008), raising the following question for our review:

---

4. On the date of sentencing, Lee also pled guilty in another case to an unrelated charge of conspiracy to distribute cocaine, for which Lee was sentenced to five years imprisonment to run concurrent with the sentences imposed in the instant case.

5. Lee also presented several other issues before the Court of Special Appeals, none of which were presented in Lee's Petition for Writ of Certiorari to this Court, and none of which do we address.

Did the trial court err in permitting the State, over objection, to argue to the jury that the "law of the streets" prevented the victim from identifying Lee as his assailant, and to argue that they should protect their community by teaching Lee a lesson?

We shall hold that the trial judge did err in permitting the State to argue to the jury during rebuttal argument that a victim's testimony was not credible because he was following "the law of the streets," that the jury should protect their community and clean up the streets, and that the jury should teach the defendant not to abide by the "laws of the streets" in settling disputes, and shall conclude that the cumulative effect of the prosecutor's comments was sufficiently prejudicial to deny Lee a fair trial.

## Discussion

The remarks in this case that Lee asserts were improper fall into three groups: use of the phrase "the law of the streets," by which the prosecutor argued to the jurors that Cotton was not credible because he was abiding by "the law of the streets"; the assertion that the jury should protect their community and clean up the streets; and, finally, the use of the phrase "laws of the streets," by which the prosecutor asked the jury to teach Lee a lesson not to settle disputes with violence. Lee argues that the prosecutor's comments about the "law(s) of the streets," in both instances, were improper because they alluded to facts not in evidence and that the comments exhorting the jurors to clean up the streets were an improper invocation of the prohibited "golden rule" argument.[6] The cumulative effect of the comments, Lee contends, was sufficiently prejudicial to deny Lee a fair trial and to warrant reversal because the State's case against Lee was dependent entirely upon the credibility of the eyewitness. Lee also

---

**6.** A "golden rule" argument is one in which a litigant asks the jury to place themselves in the shoes of the victim, *Lawson v. State,* 389 Md. 570, 593 n. 11, 886 A.2d 876, 889 n. 11 (2005), or in which an attorney appeals to the jury's own interests, *Hill v. State,* 355 Md. 206, 214–15, 734 A.2d 199, 204 (1999).

asserts that the prosecutor's comments were repeated and involved issues central to the case and that the trial judge took no contemporaneous or direct curative action. Finally, Lee contends that the State's argument that Cotton was being untruthful because he was following "the law of the streets" cannot be justified under the "invited response doctrine."[7]

The State, conversely, argues that the trial court acted within its discretion in allowing the State's rebuttal argument. The State contends that "the law of the streets" comments directed to Cotton's credibility were not improper and that they were a fair and direct response to the issues raised by Lee in his summation, specifically that the State did not call Cotton because he was not helpful to the State's case and that "it goes against nature" for Cotton, the victim of the shooting, to lie on the witness stand. The State asserts that the prosecutor's plea to the jury to clean up the streets was not improper because it did not call for the jury to divert its focus away from the function of judging the defendant based upon the evidence presented. The State argues also that the "laws of the streets" comment relating to teaching Lee a lesson was not improper and that, even so, it was an isolated event. The State also contends that any prejudice that could have resulted from the prosecutor's comments was ameliorated by the curative instruction delivered by the judge.

The United States Supreme Court has discussed, and we have acknowledged, the purpose and importance of closing arguments:

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then

---

**7.** The " 'invited response doctrine' suggests that 'where a prosecutorial argument has been made in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each other out, thus obviating the need for a new trial.' " *Spain v. State,* 386 Md. 145, 157 n. 7, 872 A.2d 25, 32 n. 7 (2005).

can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.

*Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593, 600 (1975) (citation omitted); *Henry v. State*, 324 Md. 204, 229-30, 596 A.2d 1024, 1037 (1991). *See also Wilhelm v. State*, 272 Md. 404, 412, 326 A.2d 707, 714 (1974). As a result, we have given attorneys wide latitude in the presentation of closing arguments, because "[s]ummation provides counsel with an opportunity to creatively mesh the diverse facets of trial, meld the evidence presented with plausible theories, and expose the deficiencies in his or her opponent's argument." *Henry*, 324 Md. at 230, 596 A.2d at 1037.

Generally, "the party holding the 'affirmative of the issue ... has the right to begin and reply, both in the introduction of evidence and in the argument to the jury.'" *Harris v. State*, 312 Md. 225, 255, 539 A.2d 637, 652 (1988), quoting *Kenly v. Washington County R.R. Co.*, 129 Md. 1, 6, 98 A. 232, 234 (1916). In *Harris*, we continued that "[i]n more contemporary terms we might say that one factor bearing on which side should have the advantage of opening and closing argument is which party has the burden of persuasion.... [I]t is clear that in a criminal case the prosecution ordinarily bears the burden of persuasion and the burden of production and thus usually has 'the right to the first and last word in the trial.'" *Id.* at 255–56, 539 A.2d at 652. *See also* Jacob A. Stein, *Closing Arguments* Section 1:6 (2d ed. 2005) ("At the close of the evidence in a criminal trial, the prosecution ordinarily opens the argument. The defense then follows with a reply, and the prosecution responds with a rebuttal.").

With regard to prosecutorial closing arguments, both first close and rebuttal, we have espoused:

> The prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom. In this regard, [g]enerally, ... the prosecuting attorney is as free to comment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his comments, as is accused's counsel to comment on the nature of the evidence and the character of witnesses which the [prosecution] produces.
>
> * * *
>
> While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.

*Degren v. State*, 352 Md. 400, 429–30, 722 A.2d 887, 901–02 (1999) (citations omitted). *See also Lawson v. State*, 389 Md. 570, 591, 886 A.2d 876, 888 (2005); *Spain v. State*, 386 Md. 145, 152–53, 872 A.2d 25, 29 (2005); *Ware v. State*, 360 Md. 650, 681–82, 759 A.2d 764, 780 (2000); *Hill v. State*, 355 Md. 206, 222, 734 A.2d 199, 208 (1999); *Wilhelm*, 272 Md. at 412, 326 A.2d at 714. The "invited response doctrine" has evolved as an extension of the general rule that comments made by a prosecutor must be examined in context, which "suggests that 'where a prosecutorial argument has been made in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each

other out, thus obviating the need for a new trial.' " *Spain,* 386 Md. at 157 n. 7, 872 A.2d at 32 n. 7.

▉▉▉ Notwithstanding the wide latitude afforded prosecutors in closing arguments, a defendant's right to a fair trial must be protected. *Degren,* 352 Md. at 430, 722 A.2d at 902; *Wilhelm,* 272 Md. at 413–15, 326 A.2d at 714–15. Not every improper remark, however, necessitates reversal, and whether a prosecutor has exceeded the limits of permissible comment depends upon the facts in each case. *Spain,* 386 Md. at 158, 872 A.2d at 33; *Degren,* 352 Md. at 430, 722 A.2d at 902. *See also Ware,* 360 Md. at 682, 759 A.2d at 780–81; *Hunt v. State,* 321 Md. 387, 435, 583 A.2d 218, 241 (1990); *Wilhelm,* 272 Md. at 415, 326 A.2d at 715. In *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976), we adopted a test to determine whether error in criminal causes is harmless or prejudicial; we concluded that,

> when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*See also Lawson,* 389 Md. at 592, 886 A.2d at 889 (noting that reversal " 'is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused' "); *Wilhelm,* 272 Md. at 431, 326 A.2d at 724, (stating that the " 'mere occurrence of improper remarks does not by itself constitute reversible error' " and that if " 'we cannot say that the assailed argument constituted "a material factor in the conviction" . . . result[ing] in "substantial prejudice to the accused" or that "the verdict would have been different had the improper closing argument not been made . . . ," then we must necessarily conclude that no prejudicial error resulted from the argument' ").

■ When assessing whether reversible, or its converse, harmless, error occurs when improper statements are made during closing argument, we review various factors, including "the severity of the remarks, the measures taken to cure any potential prejudice, and the weight of the evidence against the accused." *Lawson,* 389 Md. at 592, 886 A.2d at 889; *Spain,* 386 Md. at 159, 872 A.2d at 33. *See also Hill,* 355 Md. at 223, 734 A.2d at 208 (" 'When in the first instance the remarks of the State's Attorney do appear to have been prejudicial, a significant factor in determining whether the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action, as the exigencies of the situation may have appeared to require, to overcome the likelihood of prejudice, such as informing the jury that the remark was improper, striking the remark and admonishing the jury to disregard it.' "); *Henry,* 324 Md. at 232, 596 A.2d at 1038 (stating that "[i]n determining whether reversible error occurred, an appellate court must take into account '1) the closeness of the case, 2) the centrality of the issue affected by the error, and 3) the steps taken to mitigate the effects of the error' ").

## A. The Prosecutor's Comments

Our first determination is whether any statements made by the prosecutor during her rebuttal argument were improper. *See Lawson,* 389 Md. at 593, 886 A.2d at 889; *Spain,* 386 Md. at 156, 872 A.2d at 31. Although the Court of Special Appeals concluded that "the prosecutor's rebuttal comments came close to overstepping the bounds of legitimate argument," but did not do so, we disagree. The comments clearly were improper.

### "The Law of the Streets"—Cotton's Credibility

■ During its rebuttal argument, the State argued to the jury that they should not believe Cotton; Cotton was being untruthful about Lee not being the shooter, because Cotton was following "the law of the streets," to which Lee's counsel

interposed several objections, which were summarily overruled. Lee contends that the prosecutor's comments about "the law of the streets," directed at the credibility of Cotton, were improper because they alluded to facts not in evidence. The State, however, asserts that these comments were not improper, but rather, that they were a fair and direct response to the issues raised by Lee in his closing argument.

Generally, we have deemed comments made during closing argument that invite the jury to draw inferences from information that was not admitted at trial, improper. *See Spain,* 386 Md. at 156, 872 A.2d at 31; *Hill,* 355 Md. at 222, 734 A.2d at 208; *Degren,* 352 Md. at 433, 722 A.2d at 903. In *Spain,* the defendant was charged with and convicted of various controlled dangerous substance offenses. The prosecution's case was supported by the testimony of the officer who arrested Spain, the drugs confiscated from a third party at the time of the arrest and documentary exhibits. During closing, the prosecutor stated that the police officer who testified did not have a motive to lie and that he would not testify falsely, because he "would have to engage in a lot of lying, in a lot of deception and a conspiracy of his own to come in here and tell you that what happened was not true. He would have to risk everything he has worked for. He would have to perjure himself on the stand." *Id.* at 151, 872 A.2d at 28. Defense counsel's objection was overruled, because the trial court determined that, "the jury understand[s] that this of course is closing argument, and that they will [consider the statements to be] lawyer's arguments." *Id.* at 28, 872 A.2d at 29. We concluded that the prosecutor's comments about the absence of a motive to lie was within the permissible bounds of closing argument, but ruled improper the reference to the possible adverse consequences that the police officer would suffer if he were to lie; we opined that although the concept of "adverse personnel implications flowing from perjured testimony by a police officer resonates at a common sense level, at no time during the trial scrutinized in the present case did the State introduce evidence from which it could be inferred ineluctably that Officer Williams risked his career or any of its benefits if

he were to testify falsely." *Id.* at 156, 872 A.2d at 31–32. *But see Wilhelm*, 272 Md. at 404, 326 A.2d at 707, a consolidation of two cases—*Wilhelm v. State* and *Cook v. State*—in which we espoused an exception to the rule against alluding to facts not in evidence. The complaint in *Cook*, a murder case, was over the prosecutor's informing the jury, in closing argument, that over 300 people had been murdered in Baltimore City in the last year, that an unknown number of persons had been robbed with weapons, and that the victims were most often people unable to fight back. We determined that this argument was not improper because it made reasonable inferences from the facts in evidence, and those "of such general notoriety as to be matter of common knowledge." *Id.* at 445, 326 A.2d at 731.

We also have iterated that prosecutors should not appeal to the passions and prejudices of a jury. *See Lawson*, 389 Md. at 597, 886 A.2d at 892; *Hill*, 355 Md. at 211, 734 A.2d at 208; *Contee v. State*, 223 Md. 575, 584, 165 A.2d 889, 894 (1960). *See also Wilhelm*, 272 Md. at 414–15, 326 A.2d at 715 ("Whether it be in opening statement or in summation, 'appeals to class prejudice or to passion are improper and may so poison the minds of jurors that an accused may be deprived of a fair trial,'; 'the State's Attorney has an obligation to refrain from making any remark—within the hearing of the jury— which is likely or apt to instigate prejudice against the accused,'; or, in derogation of the defendant's right to a fair trial, is 'calculated to unfairly prejudice the jury against the defendant.'") (citations omitted). In *Lawson*, the prosecutor, during rebuttal argument, implied that the defendant in a sexual offense case was a "monster" and a "child molester." We held that these comments were improper, agreeing that they were "designed to inflame the jurors' prejudices against a hated class of individuals." *Id.* at 597, 886 A.2d at 891–92. In reaching our conclusion, we cited *Walker v. State*, 121 Md. App. 364, 709 A.2d 177 (1998), in which our intermediate appellate court concluded that the prosecutor's closing argument calling the defendant an "animal" and a "pervert" was improper; we also noted that the " 'right to a fair trial and the

search for the truth, however, should not be hampered or obfuscated by extreme appeals to passion calculated to inflame the jury. . . . It is incumbent upon the People's representative to maintain an air of dignity and stay above the frey.' " *Lawson,* 389 Md. at 598, 886 A.2d at 892, quoting *Walker,* 121 Md.App. at 380–81, 709 A.2d at 185.

In the instant case, the State essentially argued to the jury that Cotton was not credible because Cotton was following "the law of the streets." There was nothing in the record, nor was there any testimony or evidence, however, as to what constituted the "the law of the streets" in this context. The prosecutor's comments left the jurors to speculate what was contemplated by the phrase, which is not "of such general notoriety as to be matter of common knowledge." Rather, the prosecutor's argument had the effect of leading to juror speculation and decision, perhaps, on information outside of the evidence, and as such, constituted an improper appeal.

 The State argues, nevertheless, that reversal is not required because the prosecutor's "law of the streets" comments were a fair and direct response to the issues raised by Lee's counsel in his closing argument, specifically that "it goes against nature" for Cotton, the victim of the shooting, to testify falsely about the identity of the shooter. The " 'invited response doctrine' suggests that 'where a prosecutorial argument has been made in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each other out, thus obviating the need for a new trial.' " *Spain,* 386 Md. at 157 n. 7, 872 A.2d at 32 n. 7. The doctrine does not grant a prosecutor unbridled discretion to respond to an inappropriate defense argument with improper conduct, but rather, permits the prosecution to respond to improper conduct in order to equalize the positions of both sides and remedy any unfair prejudice.[8] The Supreme Court in *United States v. Young,* 470 U.S.

---

8. *See also* Bennett L. Gershman, *The Prosecutor's Duty to Truth,* 14 Geo. J. Legal Ethics 309, 331 (2001) ("Under the 'fair reply' or 'invited

1, 12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1, 10–11 (1985), iterated that "the idea of 'invited response' " "should not be read as suggesting judicial approval or—encouragement—of response-in-kind that inevitably exacerbates the tensions inherent in the adversary process" but "whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant."

██ As a result, because the "invited response doctrine" calls for the prosecutor's invited response to be considered in context with the defense counsel's own impropriety, it is not applicable when defense counsel has made no improper argument. *See Spain,* 386 Md. at 157 n. 7, 872 A.2d at 32 n. 7 (stating that the "invited response doctrine" is only applicable when the response is made after an improper, direct and specific attack is made on a witness's veracity); *Johnson v. State,* 325 Md. 511, 519, 601 A.2d 1093, 1097 (1992) (determin-

---

response' doctrines, a prosecutor is allowed to respond to improper conduct by defense counsel in order to equalize the positions of both sides and remedy unethical defense behavior. Although truth may be impeded when a prosecutor attempts to 'fight fire with fire,' courts typically preserve adversarial fairness by allowing prosecutors considerable leeway to retaliate.") (footnotes omitted); Tara J. Tobin, *Miscarriage of Justice During Closing Arguments by an Overzealous Prosecutor and a Timid Supreme Court in State v. Smith,* 45 S.D. L.Rev. 186, 219 (2000) ("The invited response doctrine, also referred to as the retaliation doctrine, provides that an inappropriate argument does not warrant a reversal if it was invited by defense counsel's own improper closing argument."); Rosemary Niding, *Restraining Adversarial Excess in Closing Argument,* 96 Colum. L.Rev. 1299, 1319 (1996) (noting that the "invited response doctrine" "permits prosecutors to respond in kind during their rebuttal to defense improprieties in argument"); Jonathan H. Levy, *Limiting Victim Impact Evidence and Argument after Payne v. Tennessee,* 43 Stan. L.Rev. 1027, 1058 (1993) (explaining that the "invited response doctrine" "provides that the impact of improper remarks is weakened when they are made in response to misconduct by opposing counsel"; "Invited response doctrine . . . is based on the idea that two wrongs can make a right; an improper 'invitation' by the defense attorney can negate the effects of improper remarks by the prosecutor."); Bruce J. Berger, *The Prosecution's Rebuttal Argument: The Proper Limits of the Doctrine of "Invited Response",* 19 Crim. L. Bull. 5, 6 (1983) ("This doctrine holds that, if defense counsel first argues improperly about an issue, the prosecutor can then respond with his own improper arguments.").

ing that improper prosecutorial remarks, on rebuttal, were not justified as "nothing more than a reasonable reply to the arguments made by defense counsel" because they were improper, while the defense counsel's argument was not). Although the prosecutor was entitled to respond to the argument posed by the defense, *see Degren*, 352 Md. at 432 n. 14, 433, 722 A.2d at 902 n. 14, 903 (concluding that comments by prosecutor during rebuttal, although "unprofessional and injudicious," but not improper, were made in response to defense counsel's closing argument); *Henry*, 324 Md. at 232, 596 A.2d at 1038 (determining that rebuttal argument was not improper, and that, when viewed in context, was merely a direct response to the argument of defense counsel); *Blackwell v. State*, 278 Md. 466, 481, 365 A.2d 545, 553–54 (1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977) (stating that prosecutor was entitled to respond to and correct statements made by defense counsel during closing argument), she, however, was not entitled to exceed the bounds of permissible argument. Therefore, because defense counsel's argument regarding whether Cotton was being truthful was not improper, there is no "invited response" and the prosecutor's "law of the streets" comments exceeded the permissible scope of closing argument.

## "Clean Up The Streets" Argument

The State also asserted during its rebuttal argument that residents of Baltimore City have a right to be safe and requested the jurors to protect their community and clean up the streets. The court repeatedly overruled Lee's counsel's objections, and thereafter, issued a curative instruction, by rereading the instructions provided before closing arguments and informing the jurors that this was "argument" and that they were not to consider appeals to passion and prejudice. Lee argues that the prosecutor's comments appealing to the jurors to protect their community and clean up the streets constituted an invocation of the prohibited "golden rule" argument. The State asserts that the prosecutor's argument did

not call for the jury to divert its focus away from its function of judging the defendant on the evidence presented.

A "golden rule" argument is one in which a litigant asks the jury to place themselves in the shoes of the victim, *Lawson,* 389 Md. at 593 n. 11, 886 A.2d at 889 n. 11, or in which an attorney appeals to the jury's own interests, *Hill,* 355 Md. at 214–15, 734 A.2d at 204. We have iterated that prosecutors should not implore jurors to consider their own interests in violation of the prohibition against the "golden rule" argument.[9] *See Lawson,* 389 Md. at 597, 886 A.2d at 892. In *Hill,* 355 Md. at 211–12, 734 A.2d at 202, the prosecutor, during opening arguments, told the jury that they were "chosen to send a message to protect [the] community" and to "keep [ ][the] community safe." Later, during closing arguments, the prosecutor again requested the jury to send that same message to the community and to the defendant's "cronies." We stated that the prosecutor's statements, which referred "to the need for the jurors to convict petitioner in order to preserve the quality of their own communities," were "wholly improper and presumptively prejudicial," *id.* at 216, 219–20, 734 A.2d at 205, 206, and iterated that "appeals to jurors to convict a defendant in order to preserve the safety or quality of their communities are improper and prejudicial":

> As it noted in its opinion in this case, in *Couser v. State,* 36 Md.App. 485, 374 A.2d 399 (1977), *aff'd on other grounds,* 282 Md. 125, 383 A.2d 389, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978), it had declared improper a prosecutor's statement to the jury that "by your vote you can say no to drug dealers, to people who rain destruction." *See also Holmes v. State,* 119 Md.App. 518, 705 A.2d 118, *cert. denied,* 350 Md. 278, 711 A.2d 870 (1998). Courts throughout the country have condemned arguments of that kind, which are unfairly prejudicial and risk diverting the

---

9. *See also* Kerry E. Notestine, *Closing Arguments,* 29 The Brief 72, 73 (American Bar Association, Fall 1999) (noting that the problem with the "golden rule" argument "is that it asks jurors to decide the case based on their interests and bias, rather than evidence in the case").

focus of the jury away from its sole proper function of judging the defendant on the evidence presented. *See Arrieta–Agressot v. United States,* 3 F.3d 525, 527 (1st Cir.1993) (criminal trial is "not the occasion for superheated rhetoric from the government urging jurors to enlist in the war on drugs"); *United States v. Solivan,* 937 F.2d 1146 (6th Cir.1991) (government prosecutors are not at liberty to urge jurors to convict defendants as blows to the drug problem faced by society or specifically within their communities, or to send messages to all drug dealers; such appeals are extremely prejudicial and harmful to the constitutional right of fair trial); *United States v. Monaghan,* 741 F.2d 1434 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985) (the evil lurking in such appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence); *United States v. Barlin,* 686 F.2d 81 (2d Cir.1982); *Powell v. United States,* 455 A.2d 405 (D.C.App.1982); *Jenkins v. State,* 563 So.2d 791 (Fla.App.1990); *State v. Apilando,* 79 Hawai'i 128, 900 P.2d 135 (1995); *State v. Draughn,* 76 Ohio App.3d 664, 602 N.E.2d 790 (1992); *State v. Goode,* 278 N.J.Super. 85, 650 A.2d 393 (A[pp].D[iv].1994).

*Hill,* 355 Md. at 225–26, 734 A.2d at 209–10.[10]

In asserting that the jurors should consider their own interests and those of their fellow Baltimoreans, and should

---

**10.** *See also White v. State,* 125 Md.App. 684, 698, 703, 726 A.2d 858, 864, 867, *cert. denied,* 354 Md. 573, 731 A.2d 971 (1999) (the prosecution implored the jury to return guilty verdict because, "It's your community," and the defendant is "a dangerous person"; "An argument that the community is concerned about the serious effect of a certain crime must be framed in such a way as to remind the jury of its duty to convict when the evidence supports conviction, and not for the jurors to place their own personal interests before their obligation to decide the issues on the evidence."); *Holmes v. State,* 119 Md.App. 518, 526–27, 705 A.2d 118, 122–23, *cert. denied,* 350 Md. 278, 711 A.2d 870 (1998) (the prosecutor, in a drug case, stated during closing argument, "This is not about jail time. It's about the day of reckoning, the day of accountability, the day we say no, Mr. Holmes, no longer will we allow you to spread that poison on the streets"; the Court of Special Appeals disapproved, noting that " 'we say no' comments implore the jurors to

clean up the streets to protect the safety of their community, the State clearly invoked the prohibited "golden rule" argument. Essentially, the State was calling for the jury to indulge itself in a form of *vigilante justice* rather than engaging in a deliberative process of evaluating the evidence.[11] Even if the prosecutor's comments were directed such that the jurors were asked to teach Lee a lesson, and not to send a message to the entire community, these comments were improper because they asked the jury to view the evidence in this case, not objectively, but consonant with the juror's personal interests.

### The "Laws of the Streets"—To Teach Lee a Lesson

Near the conclusion of its rebuttal argument, the State asserted that the jurors should teach Cotton a lesson not to follow the "laws of the streets" by settling disputes with violence. Lee contends that the prosecutor's comments about the "laws of the streets," directed to the jury to teach Lee a lesson not to settle disputes with violence, were improper because they alluded again to facts not in evidence.

Here, the "laws of the streets" comment was set in a different context than what the prosecutor had argued before, but again, there was nothing on the record from which the jury could derive what was meant. The prosecutor's comments left the jurors to surmise, on their own, what was contemplated by the phrase. In fact, the prosecutor had used

---

consider their own interests and therefore violate the prohibition against the 'golden rule' argument") (emphasis in original).

**11.** *See* Blacks Law Dictionary 1599 (8th ed. 2004) (defining "vigilante" as "[a] person who seeks to avenge a crime by taking the law into his or her own hands"); Merriam–Webster's Collegiate Dictionary 1395 (11th ed. 2005) (defining "vigilante" as "a member of a volunteer committee organized to suppress and punish crime summarily," "as when the processes of law are viewed as inadequate"); Webster's II New College Dictionary 1231 (1999) (defining "vigilante" as a "member of a vigilance committee," which is a "volunteer group of citizens that without authority assumes police powers, as pursuing and punishing criminal suspects"); Random House Dictionary of the English Language 2121 (2d ed. unabridged 1987) (defining "vigilante" as "done violently and summarily, without recourse to lawful procedures; *vigilante justice* ").

the term, "the law(s) of the streets," in two entirely different connotations, once in reference to the credibility of Cotton and the other to teach Lee a lesson, so that our conclusion is buttressed that the invocation of the phrase could do nothing other than lead to juror speculation and decision, perhaps, on information outside of the evidence.

**B. Prejudice Suffered by Lee—Harmless Error Analysis**

Although we conclude that the prosecution's comments in this case were improper allusions to facts not in evidence, appeals to the passions and prejudices of the jury and an invocation of the prohibited "golden rule" argument, our inquiry does not end. We must address whether the error was harmless. While not every impermissible comment by the prosecutor constitutes reversible error, the State bears the burden of proving that an error is harmless and must prove beyond a reasonable doubt that the contested error did not contribute to the verdict. *See Dorsey,* 276 Md. at 659, 350 A.2d at 678. When determining whether overruling defense objections to improper statements during closing argument constitutes reversible, or harmless, error, we consider several factors, including the severity of the remarks, cumulatively, the weight of the evidence against the accused and the measures taken to cure any potential prejudice. *Lawson,* 389 Md. at 592, 886 A.2d at 889; *Spain,* 386 Md. at 159, 872 A.2d at 33.

The State contends that any error in overruling the defense objections was harmless because any prejudice resulting from the cumulative effect of the comments was cured by the instruction delivered by the judge. Considering the statements cumulatively, Lee argues, conversely, that they were sufficiently prejudicial to deny him a fair trial and to warrant reversal, because the State's case against Lee was dependent entirely upon the credibility of the eyewitness, the prosecutor's comments were repeated and involved issues central to the case and the trial judge took no contemporaneous or direct curative action. The Court of Special Appeals determined that, even if the prosecutor's comments were improper, the judge's failure to sustain the objections was harmless and did

not render the trial unfair because "the court took prompt curative action." Again, we disagree.

First we must consider the statements in the context of the prejudice that each of the statements, and all of them together, created in the minds of the jurors. *Lawson*, 389 Md. at 600, 886 A.2d at 893. *See also Spain*, 386 Md. at 161, 872 A.2d at 34. In this case, the prosecutor's reference to the "law(s) of the streets" and her appeals to the jurors to clean up the streets and protect the neighborhoods, cumulatively, were not isolated comments but were part of persistent appeals to the jurors' biases, passions and prejudices. The prosecutor referred to the "law(s) of the streets" several times, in two different contexts, arguing that Cotton was not credible because he was following "the law of the streets," as well as that Lee should be taught a lesson not to follow the "laws of the streets." Additionally, even after the trial court issued a curative instruction to the jury, the prosecutor continued.

The strength of the evidence against the accused is an important consideration. *See Spain*, 386 Md. at 161, 872 A.2d at 34; *Wilhelm*, 272 Md. at 427, 326 A.2d at 722 ("Another important and significant factor where prejudicial remarks might have been made is whether or not the judgment of conviction was 'substantially swayed by the error,' or where the evidence of the defendant's guilt was 'overwhelming.'"). In this case, it is apparent that the evidence against Lee was not overwhelming; instead, like in *Lawson*, 389 Md. at 600, 886 A.2d at 894, the "'she said, he said' case" was close. The State's case was supported by the testimony of an eyewitness, who stated that, on September 12th, the day before the shooting, Lee and Cotton had been involved in a fight and that Lee had had a gun at that time, and that the following day, from an upstairs window in her house, she heard gunshots and saw Lee running after Cotton with an "object that looked like a gun" from which smoke appeared to be emanating. Subsequently, the eyewitness went to the police station and identified Lee as the individual involved in the altercation with

Cotton on September 12th, and the one chasing Cotton down the street the next day. Two detectives and a police officer also testified for the prosecution regarding their investigation of the case, including the eyewitness's identification of Lee. The defense presented testimony from the victim, Cotton, who stated that Lee did not shoot him. Lee also presented the testimony of the brother of the eyewitness, who stated that the view of the eyewitness from the upstairs windows would have been obstructed and that the eyewitness had told him that she had not seen anything. The State's case was less than substantial.

A prime factor relied upon by the Court of Special Appeals, however, was the instruction given by the trial judge as curative. *See Lawson*, 389 Md. at 601, 886 A.2d at 894; *Spain*, 386 Md. at 159–60, 872 A.2d at 33–34; *Wilhelm*, 272 Md. at 423–24, 326 A.2d at 720 (noting that "a significant factor in determining whether the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action ... such as informing the jury that the remark was improper, striking the remark and admonishing the jury to disregard it"). *Lawson* and *Spain* are again instructive. In *Spain*, 386 Md. at 151, 872 A.2d at 29, the trial judge, in response to objection by defense counsel, which was overruled, informed the jury "that this of course is closing argument, and that they will [consider the statements to be] lawyers' arguments." We concluded that the response was a contemporaneous and specific jury instruction sufficient to diminish prejudice from the prosecutor's improper comments:

> We note also the likely diminution of prejudice from the prosecutor's comments as a result of the trial judge's contemporaneous reminder that they were only an attorney's argument, not evidence, as well as the pertinent instructions that the trial judge gave to the jury before sending it to deliberate. In response to the objection by defense counsel, the trial judge stated, "Okay, well the jury understand[s] that this of course is closing argument, and that they will [consider the statements to be] lawyers' arguments. Over-

ruled." Although the trial judge did not acknowledge the comments as improper, nor did he explicitly instruct the jury to disregard the comments, he reminded the jury that the prosecutor's statements only should be considered as argument, not evidence. By emphasizing the argumentative nature of closing arguments contemporaneously with the improper comments, the judge took some effort to eliminate the jury's potential confusion about what it just heard and therefore ameliorated any prejudice to the accused.

*Id.* at 159–60, 872 A.2d at 33–34. In *Lawson*, 389 Md. at 570, 886 A.2d at 876, we addressed an entirely different situation in which the judge did not make any effort, aside from providing jury instructions before closing argument and sustaining one objection, of many, to ameliorate any prejudice resulting from an improper argument. Comparing the judge's efforts with those in Spain, we concluded that "there was no immediacy or specificity as to any efforts to cure":

In the case *sub judice* there were no contemporaneous efforts by the trial judge to ameliorate the prejudice or any specific effort to cure the effects. Instead, he relied only on the general instructions he had previously given and the fact that written general instructions would go in the jury deliberation room.

We look at the trial judge's actions as a whole in reference to the statements. In *Spain*, for example, upon objection by the defense attorney to the prosecutor's comments, the trial court contemporaneously and specifically addressed the issue that the jury understood the remarks to be only lawyers' arguments and not evidence. In petitioner's case the only time the judge addressed the weight or appropriateness of the prosecutor's remarks was in the general jury instructions, which at no point directly addressed the improper remarks. Thus there was no immediacy or specificity as to any efforts to cure.

*Id.* at 602–03, 886 A.2d at 895 (citations omitted). Therefore, to be sufficiently curative, the judge must instruct contemporaneously and specifically to address the issue such that the jury understands that the remarks are improper and are not

evidence to be considered in reaching a verdict. *See Miller v. State*, 380 Md. 1, 35–37, 843 A.2d 803, 823–24 (2004) (concluding that the trial court properly denied a motion for a mistrial based upon the prosecutor's comments because the court properly sustained the defense's objections, granted the defense's motions to strike and immediately instructed the jury to disregard the specific comments).

In this case, the trial judge provided the jury with the model criminal pattern jury instructions before closing arguments. During the State's rebuttal argument the only curative instruction given by the trial judge was a repeat of the prior instructions given to the jury: "Appeals to passion, prejudice, so forth and so on, are not proper appeals. It's an argument, but your duty in this case is to decide the case based on the evidence, not on passion or prejudice."

This instruction, however, was neither contemporaneous nor specific. The curative instruction was only issued after the "clean up the streets" argument, not contemporaneous with the "law(s) of the streets" comments, nor did it specifically address the "law(s) of the streets" arguments or inform the jury that the prosecutor's comments were improper. Moreover, the resulting prejudice of the comments, cumulatively, was exacerbated because the judge, rather than sustaining the valid objections interposed by Lee's counsel and admonishing the prosecutor to limit her rebuttal to appropriate arguments, allowed repeated improper comments even after the curative instruction was provided to the jury; immediately after the curative instruction, the prosecutor, obviously not having gotten the message, asked the jury to teach Lee a lesson not to settle disputes with violence, to which an objection was made and again overruled, and referred to the "laws of the streets." By summarily overruling multiple defense counsel objections before issuing his curative instruction, followed by yet another overruled objection, the trial judge conveyed to the jurors that there was nothing wrong with considering the prosecutor's "law(s) of the streets" and "clean up the streets" arguments, when the sole proper function of the jury was to determine Lee's guilt or innocence based on the evidence presented at

his trial. *See Hill,* 355 Md. at 226, 734 A.2d at 210 (warning of "the persistency of the prosecutor's conduct—continuing to make these [improper] remarks time and again despite the court's rulings that the remarks were improper" because there is a "risk" that "when the prosecutor persistently ignores those rulings and continues in an improper course of conduct, that the jury may come to regard the court's rulings as rote window dressing and thus pay less attention to them").

As a result, after our own independent review of the record, we are not able to declare a belief, beyond a reasonable doubt, that the judge's error in overruling defense counsel's objections, to the prosecution's improper comments alluding to facts not in evidence, appealing to the passions and prejudices of the jury and invoking the prohibited "golden rule" argument, in no way influenced the verdict. Therefore, "such error cannot be deemed 'harmless' and reversal is mandated." *Dorsey,* 276 Md. at 659, 350 A.2d at 678.

### Conclusion

Therefore, we hold that the trial judge erred in permitting the State to argue to the jury during rebuttal argument that a victim's testimony was not credible because he was following "the law of the streets," that the jury should protect their community and clean up the streets, and that the jury should teach the defendant not to abide by the "laws of the streets" in settling disputes, and conclude that the cumulative effect of the prosecutor's comments was sufficiently prejudicial to deny Lee a fair trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

HARRELL and RAKER, JJ., concur.

Concurring opinion by HARRELL, J., which RAKER, J., Joins.

I concur fully with the Majority opinion's analysis regarding the prosecutor's improper "golden rule" closing argument and the consequences of that error. I write separately, however, to record my disagreement with the Majority opinion's conclusions regarding the prosecutor's argument references to the "law of the streets." In its brief to this Court, the State defended the prosecutor's remarks only on the grounds of the "invited response" doctrine. The State did not argue that the comments were, in the first instance, proper, independent of the "invited response" doctrine. Because the Majority opinion discusses, in its analysis of the "invited response" argument, why the "law of the streets" appeal was improper as a threshold matter, I feel compelled to state my contrary view, the State's silence thereon notwithstanding.[1]

"There can be no dispute that during summation [at the end of all evidence], counsel may 'state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence.' " *Henry v. State,* 324 Md. 204, 230, 596 A.2d 1024, 1037 (1991) (quoting *Wilhelm v. State,* 272 Md. 404, 412, 326 A.2d 707, 714 (1974)). Attorneys may treat closing argument as an "opportunity to creatively mesh the diverse facets of trial, meld the evidence presented with plausible theories, and expose the deficiencies in his or her opponent's argument." *Henry,* 324 Md. at 230, 596 A.2d at 1037. Accordingly, attorneys are afforded a "wide latitude" in closing arguments. *Degren v. State,* 352 Md. 400, 430, 722 A.2d 887, 902 (1999). "The prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom." *Degren,* 352 Md. at 430, 722 A.2d at 901 (internal

---

1. I also disagree with the Majority opinion's analysis of the "invited response" doctrine. The Majority opinion correctly notes that the invited response doctrine only applies where opposing counsel has made some improper remark or argument. Majority op. at ——. There was nothing improper in either counsel's closing remarks to the jury.

quotation omitted). "Determining whether a prosecutor has crossed the line separating 'oratorical conceit' from prosecutorial misconduct . . . . is a matter left to the sound discretion of the trial court. The exercise of that discretion will not constitute reversible error unless clearly abused and prejudicial to the accused." *Hunt v. State*, 321 Md. 387, 435, 583 A.2d 218, 241 (1990); *Degren*, 352 Md. at 431, 722 A.2d at 902. In sum,

> "[w]hile arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions."

*Spain v. State*, 386 Md. 145, 153, 872 A.2d 25, 29 (2005) (quoting *Degren*, 352 Md. at 429–30, 722 A.2d at 901–02).

The prosecutor's "law of the streets" comments merely were permissible rhetorical flourishes. The prosecutor's essential point was simple: Cotton lied about the identity of his attacker because of his friendship with Lee. The prosecutor's first reference to the "law of the streets" makes that clear. The prosecutor stated, "Richard Cotton came here to help his boy, his friend, his buddy because this Court read you the law of the State of Maryland, but that has nothing to do with the law of the streets of Baltimore." The first half of the sentence is clearly a permissible statement. A prosecutor is permitted to challenge the credibility of a witness because of his friendship with the defendant, where that friendship was a matter of evidence. The second half of the sentence, where the prosecutor mentions the "law of the streets," should be viewed as a rhetorical device designed to make the credibility argument effective and memorable for the jury.[2]

---

**2.** This rhetorical device is not novel. The rhetorical value of the phrase is apparent upon a careful analysis of the sentence. The phrase "the

In introducing the phrase the "law of the streets," the prosecutor supplied, in context, a relative definition of a corollary of the phrase: refusing to cooperate with authorities in order to protect one's friends and associates. Thus, in the context of the closing argument, the jury likely was not misled or confused as to what the prosecutor was arguing.

In *Wilhelm v. State*, 272 Md. 404, 439, 326 A.2d 707, 728–29 (1974), we held that it was not improper for the prosecutor, in a murder prosecution in Baltimore City, to make reference to the number of murders that had been committed in Baltimore during the previous year. We stated that the "reference the prosecutor made to the number of murders committed in Baltimore in 1972—based upon the widespread publicity given such data—was but a direction by him to the jury of a fact that was within their common knowledge." *Wilhelm*, 272 Md. at 440, 326 A.2d at 729. It is an understatement to say that recent difficulties encountered by police and prosecutors in obtaining full witness cooperation in Baltimore (and elsewhere) have been well-publicized.[3] In fact, it is much more likely that a juror would be aware of the challenges surround-

---

law of the streets of Baltimore" is preceded by a similar phrase, "the law of the State of Maryland." Parallelism is a rhetorical device designed to make arguments more persuasive. Wikipedia, Parallelism (rhetoric), http://en.wikipedia.org/wiki/Parallelism_(rhetoric) (last visited 3 June 2008). In crafting sentences combining different thoughts and phrases, writers are encouraged to use similar words and structure to create parallelism in their arguments. WILLIAM STRUNK JR. & E.B. WHITE, THE ELEMENTS OF STYLE 26–28 (4th ed. 2000). It is apparent to me that the prosecutor was using a basic rhetorical device (parallel structure) to craft a more persuasive argument regarding a permissible topic (witness credibility). The Court should be more leery of intruding into the discretion best left to the trial court where counsel is using rather standard rhetorical devices to argue about permissible topics.

3. The "widespread publicity" regarding the number of murders in Baltimore in 1972, according to the Court, consisted of two news articles (in two different newspapers) published 19 days before the trial. *Wilhelm v. State*, 272 Md. 404, 439 n. 10, 326 A.2d 707, 728 n. 10 (1974). A current search of the BALTIMORE SUN for "stop snitching" turns up 97 articles over the past three years. In addition, witness cooperation was a continuing theme of a fictional, but highly influential, HBO crime drama based in Baltimore that recently signed off the air.

ing witness cooperation than that same juror being aware of the number of murders in Baltimore.

The prosecutor's later references to the "law of the streets" are extensions of her first use of the phrase. For example, the prosecutor stated that "[u]nder no circumstances, if you live by the law of the streets of Baltimore, do you help police." The jury could not be confused by a term which the prosecutor already had introduced and defined in context.[4]

As noted above, the "invited response" doctrine does not apply to the present case because defense counsel's remarks were not improper (Majority op. at ——), and the "law of the streets" remarks were not improper. Nonetheless, I would deem the "law of the streets" comments from the prosecutor, even assumed *arguendo* to be improper, a fair response to defense counsel's closing argument. Appealing to the jury's common sense, defense counsel argued that it would be contrary to human nature for a victim who had been shot three times to lie to protect his assailant. Thus, defense counsel argued, Cotton's testimony that Lee was not the shooter should be considered credible. The prosecution countered, providing an alternate theory of Cotton's motivation for his testimony. The prosecutor, also appealing to the jury's common sense, argued in rebuttal that Cotton's testimony could be explained by his reluctance to incriminate his friend and cooperate with authorities. Both arguments address the same underlying issue, Cotton's credibility. Both arguments appeal to the jury's understanding of human nature and motivation. The prosecutor's comments were a fair alternative explanation of the same evidence, *i.e.*, Cotton's testimony that Lee did not attack him.

---

**4.** The prosecutor's last reference to "the law of the streets" aims at a somewhat different sense. The use of the phrase, however, likely was not confusing or misleading to the jury. The prosecutor asked the jury to "teach the defendant not to follow the laws of the streets of Baltimore, but to follow the laws of the State of Maryland." This is a straightforward exhortation to the jury to uphold the rule of law (a frequent theme of sanctioned Law Day ceremonies in Maryland and elsewhere).

Accordingly, although I concur with the judgment of the Majority opinion and its analysis of the "golden rule" invocation, I would hold that the prosecutor's "law of the streets" comments were mere oratorical conceits permissible under the liberal freedom of speech allowed in closing arguments.

Judge RAKER has authorized me to state that she joins in this concurring opinion.